Joseph Carroll **ROLAND,** Petitioner,

v.

Barry **MINTZES,** Respondent.

Civ. A. No. 81–60201.

United States District Court,
E.D. Michigan, S.D.

Jan. 3, 1983.

Donald Ferris, Jr., Ann Arbor, Mich., for petitioner.

Sherwin Vine, Detroit, Mich., for respondent.

## MEMORANDUM OPINION

JOINER, District Judge.

### I

Petitioner, Joseph Carroll Roland, who is serving a sentence of life imprisonment at the State Prison of Southern Michigan at Jackson, Michigan, brings this application for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his September, 1966 conviction in Detroit Recorder's Court of first degree felony murder. M.C.L.A. 750.-316. In his original *pro se* petition he alleged the following as grounds for habeas relief:

1. Improper jury instructions on the defense theories of accident and manslaughter denied him a fair trial and

due process of law because: a) the instructions on accident effectively directed a verdict of guilty; b) the instructions shifted the burden of proof; and c) the court did not give an involuntary manslaughter instruction.

2. The trial court violated due process by instructing the jury on premeditated murder when there was no evidence of premeditation and the prosecution's theory was felony-murder.

3. Prejudicial conduct by the trial judge denied Petitioner due process of law.

4. He was denied due process because the prosecution was permitted to call an accomplice as a witness and impeach the accomplice's testimony with a prior inconsistent statement prejudicial to Petitioner.

5. Prosecutorial misconduct denied Petitioner a fair trial.

6. The trial court erroneously instructed the jury that evidence of a prior alleged crime admitted to show intent could be considered in determining Petitioner's credibility.

7. He was denied the effective assistance of counsel at trial.

Counsel for Respondent, the Attorney General of the State of Michigan, filed a Motion to Dismiss, F.R.Civ.P. 12(b)(6) and an alternative Motion for Summary Judgment, F.R. Civ.P. 56(b). Following an initial review of the pleadings and records of the state court proceedings, the Court appointed counsel for Petitioner pursuant to 18 U.S.C. § 3006A. Counsel for both parties have submitted supplemental briefs and appeared before the Court for oral argument.

## II

This case arose from the fatal shooting of Mr. Adbul Accra on October 24, 1965, in Detroit, Michigan. Petitioner was arrested the following day and was eventually bound over for trial on a charge of open murder.

The state's theory at trial was that Petitioner shot Mr. Accra during an attempted robbery, and was thus guilty of first-degree felony murder.[1] The key witnesses for the prosecution were two alleged accomplices in the robbery attempt, Bricey Jones and Gerald Loyd. Jones testified that Petitioner approached a car standing in a parking lot with a gun in his hand and asked the driver for directions (I, 122).[2] The man became frightened, hit Petitioner's hand and the gun discharged accidentally (I, 124). Jones denied that a robbery had been discussed or was intended, but was declared a hostile witness and impeached with his prior statement to the effect that Petitioner had pulled his gun and demanded the victim's wallet. (II, 46).

Gerald Loyd testified that a robbery had been planned, but that he withdrew from participation (II, 16–17). He stated that Petitioner approached the car and stuck a pistol through an open window next to the driver (II, 18). The man began to roll up the window, Petitioner tried to get the gun out, and the gun discharged (II, 19).

A third witness, Cleve Watkins, testified that on the evening of the shooting, Petitioner, who was armed with a gun left Petitioner's home accompanied by Gerald Loyd and Bricey Jones. (II, 77). Before leaving, Petitioner said to Watkins, "Come on, Cleve, let's go get one," and when Watkins refused, Petitioner called him "chicken." (I, 81). Watkins related that when the trio returned approximately twenty minutes later, Loyd asked Petitioner why he had shot a man. (I, 80).

The prosecution also presented "similar act"[3] testimony from two witnesses concerning a robbery allegedly committed by Petitioner earlier the same day. Thomas Hughel testified that he was in a parked car when Petitioner and another man ap-

---

**1.** See M.C.L.A. 750.316; *People v. Aaron,* 409 Mich. 672, 299 N.W.2d 304 (1980).

**2.** The parenthetical Roman and arabic numerals refer to the volume and page number, respectively, of the trial court transcript, *People v. Joseph Carroll Roland,* Recorder's Court for the City of Detroit, Michigan, File No. A–127329.

**3.** See M.C.L.A. 768.27.

proached, Petitioner held a gun at the window and then obtained the passengers' wallets (IV, 6–13). Harrison Loyd testified that he was the man who accompanied Petitioner when he robbed Hughel (IV, 17).

Petitioner testified that he was walking in the parking lot, took his pistol out, and cocked it, intending to test fire it. (V, 27–36, 39). As he walked between two parked cars, something hit his hand causing the gun to discharge (V, 26–28). He denied seeing the deceased, sticking the gun in a car window or any other involvement in a robbery (V, 41, 63). On cross-examination, Petitioner was impeached with inconsistent statements given to police which the court had previously ruled inadmissible as substantive evidence because they were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Those previous statements related that Petitioner had seen the victim's car, walked up to it, and that after he extended his gun into the car, a shot was fired in the victim's head. (V, 103 *et seq.*) At trial, Petitioner also denied any involvement in the alleged prior robbery described by Hughel and Harrison Loyd.

Defense counsel argued two theories to the jury. His primary theory was that, as Petitioner testified at trial, there was no robbery, some outside force caused the gun to fire, and thus the killing was purely accidental and excusable. In addition to Petitioner's testimony and attacks on the credibility of the alleged accomplices, defense counsel relied on the testimony of prosecution witnesses that after the shooting the victim said that he was shot for no reason at all and that he had not been robbed (III, 12). As an alternative theory, defense counsel argued that if the jury found that Petitioner had acted carelessly in handling the gun, then they should consider "the only charge of homicide that should have been placed against this boy in the beginning, the charge of manslaughter and nothing else." (VI, 78).

The trial court instructed the jury on the following offenses: first degree murder, (referring primarily to felony-murder but also briefly mentioning premeditated murder), second degree murder and voluntary manslaughter. Instructions on the defense theory of accidental homicide or "misadventure" as a complete excuse were also given. There were no objections to the court's instructions and there is no indication in the record as to what instructions, if any, were requested by defense counsel. After deliberating approximately twenty minutes, the jury returned a verdict of guilty of first degree murder.

Petitioner received the mandatory sentence of life imprisonment and a long series of post-conviction proceedings ensued. His appointed appellate counsel failed to timely perfect an appeal by right. A second appointed attorney submitted an application for leave to appeal which was denied by the Michigan Court of Appeals in an unpublished order dated May 3, 1968 (Docket No. 5145). The Michigan Supreme Court denied delayed leave to appeal on March 12, 1969 (Docket No. 52219½).

Petitioner next filed a petition for writ of habeas corpus in this Court. Habeas relief was initially granted on the ground that statements by Petitioner obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) were introduced at trial for impeachment purposes. *Roland v. Michigan*, 320 F.Supp. 1195 (E.D. Mich.1970). The Sixth Circuit vacated the District Court order and remanded for reconsideration in light of *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). *Rolland v. Michigan*, 439 F.2d 1203 (6th Cir.1971). Upon remand, the petition was dismissed in an unpublished opinion. A second petition raising the same issue was filed and dismissed (U.S.D.C.E.D. Mich. No. 38524). That order of dismissal was affirmed. *Roland v. Michigan*, 475 F.2d 892 (6th Cir.1973).

In December, 1976, through retained counsel, Petitioner filed an application for delayed appeal in the Michigan Court of Appeals raising the issues contained in the instant petition. That application was denied in an order dated March 11, 1977 (Michigan Court of Appeals No. 31171). On

Petitioner's application for leave to appeal, the Michigan Supreme Court remanded to the Court of Appeals for plenary consideration. *People v. Roland*, 402 Mich. 895 (1978), (Coleman and Ryan, JJ., dissenting).

The Court of Appeals then affirmed Petitioner's conviction in an unpublished per curiam opinion dated July 25, 1979 (No. 78–1354). Leave to appeal was denied by the Michigan Supreme Court on August 26, 1981 without a statement of reasons. *People v. Roland*, 411 Mich. 1042 (1981). Justice Levin dissented, stating:

> I would reduce the degree of defendant's conviction to manslaughter and remand for resentencing. The failure to instruct on involuntary manslaughter deprived Roland of jury consideration of his alternative theory because that was the only type of manslaughter that could possibly accord with the testimony. Defense counsel's failure to seek an appropriate manslaughter instruction indicates that there is justification for Roland's claim on appeal that he was denied the effective assistance of counsel.

The instant habeas petition followed.

### III

■ Respondent argues on three procedural grounds that the petition should be dismissed without consideration of the merits of Petitioner's claims. First, Respondent contends that Petitioner has not exhausted available state court remedies as required by 28 U.S.C. § 2254(b) and (c). That argument is without merit. Review of Petitioner's briefs in his most recent appeals to the Michigan Court of Appeals and Michigan Supreme Court indicates that Petitioner fairly presented the substance of each of his current federal constitutional claims to those courts. Under these circumstances, the exhaustion requirement is satisfied. *See Anderson v. Harless,* —— U.S. ——, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982); *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

Second, Respondent contends that the petition should be dismissed pursuant to 28 U.S.C. § 2254 Rule 9(a). That Rule provides:

> (a) Delayed petitions. A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.

In *Davis v. Adult Parole Authority*, 610 F.2d 410 (6th Cir.1979), the Sixth Circuit explained that Rule 9(a) is based on the equitable doctrine of laches, and "must be carefully considered and liberally construed." *Id.* at 413–414. The Rule requires a two-pronged inquiry: (1) it must appear that the state has been prejudiced in its ability to respond to the claimed grounds for habeas relief, and (2) Petitioner must be given an opportunity to rebut the apparent prejudice, or to show that the prejudice would not have been avoided had the petition been filed earlier. *Id.* at 414. *Accord, Moore v. Smith*, 694 F.2d 115 (6th Cir.1982); *Ford v. Superintendent, Kentucky State Penitentiary*, 687 F.2d 870, 873 (6th Cir. 1982).

Here, the delay between Petitioner's conviction and the filing of the instant habeas petition—approximately fifteen years—is considerable. However, that delay has not, as Respondent contends, "per se prejudiced the state." (Brief for Respondent p. 3). In that regard, it is worthy of note that Congress deleted from the original draft of Rule 9, as "unsound policy" a presumption that any delay in excess of five years was prejudicial. Wright, "Procedure for Habeas Corpus," 77 F.R.D. 227, 235. Moreover, the issue is not, as Respondent assumes, whether the lapse of time would prejudice the state in its ability to retry Petitioner should he obtain habeas relief. *Aiken v. Spalding*, 684 F.2d 632 (9th Cir.1982). Instead, Rule 9(a) is concerned solely with possible impairment of the state's ability to respond to the claims raised in the federal habeas corpus proceeding.

■ The only specific allegation of prejudice advanced by Respondent concerns Petitioner's claim of ineffective assistance of trial counsel. Respondent suggests (but does not specifically state) that Petitioner's trial counsel may now be unavailable for an evidentiary hearing on that Sixth Amendment issue. However, because the existing trial court record is complete and provides an adequate basis for decision on each of Petitioner's claims, including ineffective assistance of counsel, Respondent has not established grounds for dismissal under Rule 9(a).

■ Finally, Respondent argues that the petition should be dismissed pursuant to Rule 9(b) of the § 2254 Rules, which provides in pertinent part:

A second or successive petition may be dismissed if . . . new or different grounds are alleged, [and] the judge finds that the failure to assert those grounds in a prior petition constituted an abuse of the writ.

As the Advisory Committee Note to this Rule explains, the court has discretion to entertain a successive application, and "full consideration of the merits of the new application can be avoided only if there has been an abuse of the writ . . . and this the Government has the burden of pleading." *Sanders v. United States,* 373 U.S. 1, 17–18, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (1963). Abuse of the writ may be found where "a prisoner deliberately withholds one of two grounds for federal collateral relief at the time of filing his first application." *Id.; Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). The respondent must plead abuse of the writ "with clarity and particularity" *Price v. Johnston,* 334 U.S. 266, 292, 68 S.Ct. 1049, 1063, 92 L.Ed. 1356 (1948).

■ Here, Respondent's brief (pp. 4–5) appears to suggest that Petitioner has filed five previous habeas petitions. In fact, records of this Court indicate that only two applications (both raising the same *Miranda* issue) were filed by Petitioner prior to the instant application. (Docket Nos. 34997, 38524 in 1970 and 1972, respectively). While there are strong policies favoring the practice of raising all federal claims in a single habeas proceeding, *see Rose v. Lundy, supra,* there is no indication that the instant petitioner deliberately withheld his present claims in the earlier proceedings or has otherwise engaged in piecemeal litigation. Actions of his appointed appellate counsel and delays in the state appellate courts were at least partially responsible for the fact that he did not exhaust state court remedies as to his present claims until August, 1981, and thus, could not raise the issues in a habeas proceeding until that time. In the absence of a clear showing that Petitioner has abused the writ, dismissal pursuant to Rule 9(b) is unwarranted. In sum, the merits of Petitioner's claims are now properly before the Court.

## IV

Petitioner alleges numerous grounds for habeas relief. However, only two of those claims, which were emphasized by Petitioner's counsel and are identified as issues "1.c" and "7", *infra,* raise any substantial question concerning the constitutionality of Petitioner's confinement.

### A.

The first of these claims is that the trial court's failure to instruct the jury concerning the lesser included offense of involuntary manslaughter denied Petitioner a fair trial and due process of law. As noted above, Petitioner's trial counsel relied primarily on a theory of accident, but also argued, in the alternative, that if the jury found that Petitioner had acted recklessly, he was at most guilty of manslaughter. Petitioner correctly states that this alternative theory of reckless homicide and his own testimony were not reconcilable with the form of manslaughter (voluntary) on which the trial court instructed, but instead were consistent only with the offense of involuntary manslaughter. *See People v. Roland, supra,* 411 Mich. at 1042 (Levin, J., dissenting). *See also, People v. Townes,* 391 Mich. 578, 218 N.W.2d 136 (1974). Thus, Petitioner asserts, the omission of an involuntary manslaughter instruction deprived him of

jury consideration of his alternative theory of defense and consequently, a fair trial. That contention fails, for three reasons, to warrant habeas relief.

■ Although Michigan has a contemporaneous objection rule concerning jury instructions, *see* Mich.Gen.Ct.Rule 516.2 (1963), no objection was made to the trial court's instructions in this case. In rejecting Petitioner's challenge to the manslaughter instructions on his delayed appeal, the Michigan Court of Appeals specifically noted that the instructions were "unobjected to," and held that, in any event, the omission of an involuntary manslaughter instruction was not prejudicial. *People v. Roland,* No. 78–1354 (Slip Opinion at 1). Where, as here, failure to comply with a state's contemporaneous objection rule is a substantial basis for the denial of the petitioner's claim on direct appeal, *see Hockenbury v. Sowders,* 620 F.2d 111, 115 (6th Cir.1980), *reh. den.,* 633 F.2d 443 (1980), that procedural default precludes federal habeas corpus review, absent a showing of "cause" for failure to object and resulting "prejudice." *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

■ Assuming *arguendo* that Petitioner could establish cause for the lack of objection, he clearly has not shown the degree of "prejudice" which the Supreme Court's most recent decision on the subject, *United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), indicates is required to support collateral attack on unobjected-to jury instructions. In *Frady,* the Court emphasized that under those circumstances, the petitioner "must show not merely that errors in his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimension." *Id.,* 102 S.Ct. at 1594.

In the instant case, no such actual prejudice resulted from the omission of a jury instruction on involuntary manslaughter. Here, as in *Frady,* the petitioner has failed to present any "affirmative evidence indicating that he had been convicted wrongly of a crime of which he was innocent." *Id.,* 102 S.Ct. at 1594. On the contrary, the evidence of Petitioner's guilt on the charge of first degree murder was overwhelming.

Since the common-law felony murder rule was in effect in Michigan at the time of Petitioner's trial, the prosecution was required to prove only that Petitioner had caused the victim's death in the course of committing or attempting to commit a felony, and that the felony was among those enumerated in the first degree murder statute, M.C.L.A. 750.316 (here, armed robbery). *See People v. Aaron,* 409 Mich. 672, 299 N.W.2d 304 (1980). The existence of a robbery attempt was established directly by the testimony of Gerald Loyd and indirectly by that of Cleve Watkins. Evidence that Petitioner committed another armed robbery at virtually that same location and under strikingly similar circumstances, only hours before the offense involved here also strongly indicated that Petitioner intended to commit a robbery when the gun discharged. Because Petitioner was engaged in that illegal act, the defense of accidental homicide was not available to him. *See* 40 C.J.S., Homicide § 112(b), p. 980. Given the strength of the other evidence, and the fact that the credibility of both Petitioner and Bricey Jones was severely undermined through impeachment with prior inconsistent statements admitting the robbery attempt, Petitioner's claim that he was merely preparing to "test fire" the gun was a transparent fabrication. In view of the overwhelming evidence of guilt, it is not at all surprising that the jury took only twenty minutes to return its verdict. As in *Frady,* the record here discloses "no risk of a fundamental miscarriage of justice." 102 S.Ct. at 1596.

Second, even if review of Petitioner's instructional claims were not precluded by the doctrine of *Wainwright v. Sykes, supra,* that argument would not establish a constitutional violation. As Petitioner recognizes, a claimed error in jury instructions is a ground for federal habeas corpus relief

only if it "so infected the entire trial that the resulting conviction violates due process." *Henderson v. Kibbe,* 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977); *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). Viewed in the context of the entire trial, the omission of an instruction on involuntary manslaughter did not render the proceedings fundamentally unfair. Petitioner's reliance on *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980) is misplaced. In that case, the Court held that a death sentence could not constitutionally be imposed after a jury verdict of guilt of a capital offense when the jury was not permitted to consider lesser included, non-capital offenses. Since the instant case obviously does not implicate Eighth Amendment limitations on the imposition of capital punishment, *Beck* is not controlling. Moreover, the Court noted in *Beck:* "[W]e have never held that a defendant is entitled to a lesser included offense instruction as a matter of due process ..." *Id.,* 447 U.S. at 637, 100 S.Ct. at 2389.

Finally, given the overwhelming evidence of Petitioner's guilt on the first degree felony murder charge, any arguable constitutional error in the trial court's manslaughter instructions was harmless beyond a reasonable doubt. This is not a case in which one of the elements of the offense such as intent, was *seriously* in dispute, and thus the jury could have rationally convicted Petitioner of the lesser offense (here, involuntary manslaughter). *Compare, e.g., Keeble v. United States,* 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973). Because the error, if any, is harmless beyond a reasonable doubt, Petitioner is not entitled to habeas relief. *Krzeminski v. Perini,* 614 F.2d 121, 125 (6th Cir.1980).

### B.

Petitioner's other major claim is that his trial attorney's failure to obtain an involuntary manslaughter instruction amounts to a violation of his Sixth Amendment right to the effective assistance of counsel. The test to be applied to that contention is whether Petitioner's defense counsel rendered "reasonably effective assistance." *Beasley v. United States,* 491 F.2d 687, 696 (6th Cir.1974). As the court explained:

Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest undeflected by conflicting considerations ... Defense counsel must investigate all apparently substantial defenses available to the defendant and must assert them in a proper and timely manner.

*Id.* [citations omitted]. However, determination of Petitioner's Sixth Amendment claim "turns 'not on a mere assessment of particular missteps or omissions by counsel, whether or not caused by negligence ... but on ... [the court's] evaluation of the total picture, with the objective of determining whether petitioner was deprived of rudimentary legal assistance.'" *United States v. Yelardy,* 567 F.2d 863, 865 (6th Cir.1978), citing *Chambers v. Maroney,* 399 U.S. 42, 60, 90 S.Ct. 1975, 1985, 26 L.Ed.2d 419 (1970) (Harlan, J., concurring in part and dissenting in part).

■ Here, examination of the full trial record, "the touchstone" of right to counsel cases, *United States v. Yelardy, supra,* at 866, does not support Petitioner's assertion that he was denied effective assistance of counsel. His trial counsel vigorously cross-examined prosecution witnesses and made timely objections on a number of procedural and evidentiary matters including, most notably, the admission of statements obtained in violation of *Miranda v. Arizona, supra.* Defense counsel presented, with reasonable competence, a defense theory of accidental homicide based on the version of events which Petitioner chose to relate at trial. Counsel's failure, whether tactical or inadvertent,[4] to object to the jury instructions relevant to his alternative defense theory of

---

4. Since defense counsel specifically argued the alternative (reckless homicide) theory to the jury, it seems likely that his lack of objection to the instructions was inadvertent rather than tactical.

manslaughter did not deprive Petitioner of a substantial defense. Under the circumstances of this case, any error in the omission of an involuntary manslaughter instruction was, as noted above, harmless beyond a reasonable doubt. Thus, defense counsel's alleged ineffectiveness in failing to object to the jury instructions was plainly not of constitutional dimensions.[5]

Petitioner's reliance on this Court's decision in *Corsa v. Anderson,* 443 F.Supp. 176 (E.D.Mich.1977), is misplaced. In that case, defense counsel's failure to object to a jury charge which violated due process by shifting the burden of proof as to an element of the offense was held a violation of the defendant's Sixth Amendment right to the effective assistance of counsel. Here, by contrast, the claimed instructional error to which counsel did not object did not violate due process.

### V

██ None of Petitioner's remaining claims merits extended discussion. He challenges several other aspects of the trial court's jury instructions (see issues 1.a, 1.b, 2 and 6, *supra*). Since Petitioner did not comply with Michigan's contemporaneous objection rule as to any of those alleged errors, federal habeas review is precluded unless he can establish both cause and resulting prejudice. *Wainwright v. Sykes, supra.* Petitioner has not shown that any of these claimed instructional errors resulted in actual prejudice, "infecting his entire trial with error of constitutional dimensions." *United States v. Frady, supra.* Consequently, habeas relief is precluded. *Id.*

Even if review were not barred by Petitioner's procedural default, none of these four instructional claims would warrant a writ of habeas corpus. Contrary to Petitioner's assertion, the jury instructions on accident as a defense did not effectively direct a verdict of guilty; rather, the court properly instructed the jury that accident was not a defense where (as here) the homicide occurred during an illegal act such as armed robbery. See 40 C.J.S. § 112(b) and 1 Mich.Crim. Jury Instructions p. 7–18 (1979). Petitioner's claim that the court's instructions shifted the burden of proof to him is not supported by the record. Read as a whole, *see Cupp v. Naughten, supra,* the instructions clearly informed the jury that the burden of proof remained upon the prosecution throughout the trial. The Court's relatively brief references to premeditation and deliberation in its instructions on first degree felony murder did not unconstitutionally permit the jury to find Petitioner guilty on an alternative theory not supported by the evidence. The error, if any, was not prejudicial since the instructions actually tended to increase the prosecution's burden of proof by suggesting that it had to prove that the murder was *both* premeditated and committed during a felony. Finally, Petitioner's challenge to the jury instructions concerning similar acts evidence is essentially a matter of state law and did not so infect the entire trial that his conviction violates due process. *See Henderson v. Kibbe, supra.*

██ Petitioner's allegation of prejudicial conduct by the trial judge is simply not supported by the record. The judge's statement that a prosecution witness had been declared "hostile" (II, 42) was merely an explanation of a procedural ruling; it was not a comment on the evidence or an invasion of the jury's province. Neither the judge's conduct of *voir dire* (I, 15) nor his questioning of a witness (II, 17), was so prejudicial as to amount to a constitutional violation which could support collateral attack on Petitioner's conviction. *See Brinlee v. Crisp,* 608 F.2d 839, 852–853 (10th Cir. 1979), *cert. denied,* 444 U.S. 1047, 100 S.Ct. 737, 62 L.Ed.2d 733 (1979).

---

5. While the Sixth Circuit has, in a number of cases, stated that harmless error tests do not apply to the deprivation of the Sixth Amendment right to the effective assistance of counsel, *see, e.g., Beasley v. United States, supra,* at 696; *McKeldin v. Rose,* 631 F.2d 458, 460 (6th Cir.), *cert. denied,* 450 U.S. 969, 101 S.Ct. 1488, 67 L.Ed.2d 619 (1980), "the court must first find counsel's performance constitutionally deficient . . ." *United States v. Yelardy, supra,* at 865, n. 1.

Petitioner's argument that the prosecutor improperly impeached Petitioner's accomplice with prior inconsistent statements involves only questions of Michigan law. Such alleged misapplication of state law is not cognizable in federal habeas corpus proceedings. *See, e.g. Engle v. Isaac, supra,* 102 S.Ct. at 1568, n. 21; *Combs v. Tennessee,* 530 F.2d 695 (6th Cir.1976).

Finally, Petitioner's claim of prosecutorial misconduct is also without merit. The instances of alleged misconduct were neither individually nor collectively so egregious as to render Petitioner's trial fundamentally unfair. Accordingly, habeas relief is not warranted. *Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); *Angel v. Overberg,* 682 F.2d 605 (6th Cir.1982).

## VI

For the foregoing reasons, the petition for a writ of habeas corpus must be denied. An appropriate order will issue.