**Winston Hall WORTHINGTON,
Petitioner-Appellant,**

v.

**UNITED STATES of America,
Respondent-Appellee.**

No. 83–5239.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 7, 1983.

Decided Jan. 18, 1984.

Rehearing and Rehearing En Banc
Denied March 5, 1984.

Ronald D. Krelstein, argued, Hal Gerber, Gerber, Gerber & Agee, Memphis, Tenn., for petitioner-appellant.

W. Hickman Ewing, Jr., U.S. Atty., Arthur S. Kahn, Vivian Donelson, argued, Memphis, Tenn., for respondent-appellee.

Before ENGEL and CONTIE, Circuit Judges, and WEICK, Senior Circuit Judge.

WEICK, Senior Circuit Judge.

Winston Hall Worthington, M.D., Petitioner-Appellant, has appealed to this Court from the judgment of the Federal District Court denying, without a hearing, his motion and amended motion to vacate sentence, filed pursuant to 28 U.S.C. § 2255.

I.

On November 17, 1978, in a 300 count indictment returned in the United States District Court for the Western District of Tennessee, Western Division, Worthington had been charged with ten violations of four different criminal statutes based upon his filing false claims under the Medicare and Medicaid statutes and regulations for medical services never rendered by him. The pertinent facts were partially stipulated by the parties in a trial by jury which lasted nearly two months. The jury found him guilty on 82 counts and not guilty on 116 counts. The court dismissed one (RICO) count and the government dismissed 101 counts. He was sentenced to two (2) years imprisonment and fined $40,000. Later the District Court reduced the fine to $20,000.

The offenses had been committed partially in the Eastern District of Arkansas and in the Western District of Tennessee, but the defendant, with the advice of his coun-

sel, executed a written waiver of venue form agreeing that the trial be held in the Western District of Tennessee. The case had been originally assigned to District Judge Bailey Brown, but was later transferred for trial to District Judge Robert M. McRae, Jr. A jury was selected on April 7, 1980, but because two jurors were unable to attend, a mistrial was declared. The second trial commenced before a jury on April 9, 1980. Between December 1, 1978, and April 7, 1980, defendant had filed some 20 different motions and 10 pretrial hearings were conducted.

Defendant, with new counsel, appealed to this Court from the judgment of conviction alleging seven grounds of error, none of which involved his present claim of incompetence of his trial counsel. We affirmed the judgment of conviction. *United States v. Worthington,* 698 F.2d 820 (6th Cir.1983). The judgment of conviction became final as appellant did not petition the Supreme Court for a writ of certiorari.

## II.

The district judge in his Ruling On Motion To Vacate Sentence Pursuant To 28 U.S.C. § 2255 gave careful consideration to the contentions of petitioner. The Court stated:

The Motion was addressed to a single ground, the denial of the effective assistance of counsel as guaranteed by the Sixth Amendment to the Constitution of the United States of America. The reasons stated in numbered paragraph 10 of the Motion are as follows:

(a) Trial counsel, John Farese, failed to timely file a motion to suppress evidence, specifically attacking the search warrant and its supporting affidavit as being in violation of defendant's rights under the Fourth Amendment to the Constitution of the United States, thereby denying defendant appellate review of the merits of the search and seizure, the product of which substantially supported the government's case. The Court of Appeals held that counsel had failed to comply with Rule 12(b)(3) and 12(f) of the Federal

Rules of Criminal Procedure and thus, the motion to suppress was waived.

(b) Trial counsel, John Farese, failed to diligently and reasonably conduct an investigation of the allegations of the indictment, having had nearly three years to do so.

(c) Trial counsel, John Farese, was paid exorbitant sums of money for attorney's fees, expenses and management of litigation and was motivated more by personal pecuniary goal than the best interests of defendant.

On March 8, 1983, counsel for the defendant filed an Amended Petition for Relief Pursuant to 28 USC § 2255. The Amended Motion asserts two numbered grounds. The first is limited to an elaboration of the Motion to Suppress issues asserted in the original Motion to Vacate and the Court of Appeals. The second ground of the Amended Motion is based upon an allegation that the defendant was induced by John Farese to waive venue for those offenses of the indictment alleged to have occurred in Arkansas. Defendant charges that "Farese" did not advise him that he was executing such a waiver, the alternatives or the consequences.

28 U.S.C. § 2255 provides in part as follows:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States ... or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

\* \* \* \* \* \*

Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon,

determine the issues and make findings of fact and conclusions of law with respect thereto.

This Court concludes that the "motion and the files and records of the case conclusively show that the [about to be] prisoner is entitled to no relief." The reasons for this conclusion are set forth below.

The leading case in this circuit and the one relied upon by the movant/defendant is *Beasley v. United States,* 491 F.2d 687 (C.A. 6 1974). That case notes that the clause of the Sixth Amendment to the Constitution which guarantees "assistance of counsel for his defence" means effective assistance of counsel. This means counsel who is reasonably likely to render and does render reasonably effective assistance. Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest undeflected by conflicting considerations. Defense counsel must investigate all apparently *substantial* defenses and must assert them in a proper and timely manner. If the action or inaction taken by an attorney that appears to be erroneous from hindsight was taken for reasons that would appear sound to a competent criminal attorney, the assistance of counsel has not been constitutionally defective.

Item 10(a) of the original Motion to Vacate charges that John Farese failed to timely file a motion to suppress evidence on the grounds of a violation of the Fourth Amendment to the Constitution. (The Amended Motion reflects that that affidavit for the search warrant was overbroad and was otherwise unreasonable.) Although other grounds are conclusively stated, the significant ground for this Motion is based upon the single premise: John Farese did not timely file a third motion to suppress based upon the overbreadth of the affidavit and warrant, thereby resulting in the defendant being deprived of an appellate review on this issue and a fair trial.

First, it must be noted that it is the law of this case that the third Motion to Suppress, which was not timely filed, was also denied on the merits by this Court and this Court was not reversed on that ruling.

When this motion was raised as grounds for reversal in the appeal of the criminal case, the Court of Appeals held that the third Motion to Suppress was not timely filed and therefore not a ground for reversal. This Court is confident that the Court of Appeals would not affirm a conviction upon the ground of untimeliness in the court below, if it would automatically entitle the defendant to a new trial. Therefore, under ground 10(a) the prisoner to be is conclusively shown not to be entitled to relief.

In our opinion, in the direct appeal, we dealt with this subject under the reading of "The Motion To Suppress." Actually, defendant did not file just one Motion to Suppress, but filed three Motions to Suppress. We stated:

The district court overruled the April 7 Motion to Suppress on grounds of timeliness and on the merits. On April 8 a mistrial was declared for other reasons. A new trial commenced on April 9. Not until the 20th day of the new trial, namely, on May 19, 1980, did defendant "renew" his motion to suppress. The renewed motion alleged for the first time that the evidence should be suppressed because the scope of the search warrant was too broad. The district court concluded that the May 19 motion to suppress was not a renewal of the earlier motion, but rather was a new motion alleging a new reason why the evidence should be suppressed. The court overruled the new motion stating that " . . . it was not filed in accordance with the rules; it is not the renewal of another motion, it's a new motion, and it is called a renewal to try to get around the rule."

Fed.R.Crim.P. 12 provides:

(b) Pretrial Motions. Any defense, objection, or request which is capable of determination without the trial of the

general issue may be raised before trial by motion. Motions may be written or oral at the discretion of the judge. The following must be raised prior to trial:

. . . . .

(3) Motions to suppress evidence;

. . . . .

(f) Effect of Failure to Raise Defenses or Objections. Failure by a party to raise defense or objections or to make requests which must be made prior to trial, . . . shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver.

. . . . .

Appellant further argues that since the district court ruled on the merits of his third motion to suppress, the issue was preserved for appeal. Under the facts of this case, we disagree. The district court overruled the midtrial motion to suppress on both timeliness grounds and on the merits. That it chose to rule on the merits at all does not alter the fact that the motion to suppress was made in violation of Fed.R.Crim.P. 12(b)(3), nor does it alter the fact that defendant waived the objection under Criminal Rule 12(f). *United States v. Baker*, 638 F.2d 198, 202 (10th Cir.1980); *United States v. Sisca*, 503 F.2d 1337, 1349 (2d Cir.1974), *cert. denied*, 419 U.S. 1008, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974).

698 F.2d at 823–24.

Actually, it is now the contention of appellant that the search warrant was overbroad; that it included matters relating to his private practice, for which he was not indicted. We hold that there was probable cause to support the issuing of the search warrant. The affidavit supporting the warrant contained averments by five former employees that fraudulent Medicare and Medicaid practices were regularly pursued during their terms of employment, and covered appellant's medical records for the period authorized by the warrant. *Cf. United States v. Abrams*, 615 F.2d 541, 545 (1st Cir.1980) (similar employee averment sufficient to authorize seizure of all records

of Medicare and Medicaid services billed and purportedly performed during period of employment). The matters relating to his private practice were not offered in evidence at the trial. We, therefore, separate the private practice part in the warrant from the portion offered at the trial, and hold that the defendant was not prejudiced by the contested warrant. *Accord Vonder-Ahe v. Howland*, 508 F.2d 364, 372 (9th Cir.1975).

In his reply brief, appellant states: "The petitioner has alleged that he repeatedly asked counsel to file a motion to suppress attacking the warrant and affidavit. He was advised that 'the time was not yet right.'" (Page 5). Thus it appears that counsel's timing for filing a motion to suppress was trial strategy and its employment in good faith by counsel violates no duty owing to his client.

In a trial which was the longest ever to take place in the district, where 115 witnesses testified, 75 for the government and 40 for the defendant, and the defendant's counsel was able to obtain acquittal on 116 counts of the indictment, dismissal by the government of 101 counts, dismissal of the RICO count by the court and conviction on only 82 counts, the defendant ought not to be heard to say that he had ineffective assistance of counsel. The District Court was in the best position to determine whether defendant's counsel was incompetent and it ruled that petitioner "received the effective assistance of counsel." (Record, p. 044).

The District Court in its opinion stated:

In the Amended Motion to Vacate, the defendant asserts what appears to be a new ground for vacating the sentence. Present counsel assert that John Farese induced him to waive venue from Arkansas to Tennessee. This pertains only to the first 137 counts of the 300-count indictment.

In the first place, the defendant is now claiming that he did not know what he was doing. Elsewhere in the Motion, the defendant asserts that he was knowledgeable enough to tell his attorney how to

investigate the case and when to file a motion to suppress and upon which grounds.

Other assignments of error not treated herein have no merit.

We find no merit in this appeal. *Fornash v. Marshall,* 686 F.2d 1179 (6th Cir.1982).

The judgment of the District Court is affirmed.

CONTIE, Circuit Judge, concurring.

Although I agree with the conclusion reached by the majority, I am of the opinion that more extensive analysis of the search warrant issues is necessary in order to decide the petitioner's ineffective assistance of counsel claim. Accordingly, I state my views separately.

Worthington's primary contention is that trial counsel incompetently failed to file a timely motion to suppress medical records. This evidence was an important part of the government's case. The Eighth Circuit has held that where a suppression motion would be successful, an attorney is guilty of ineffective assistance if he does not file the motion on time. *Brown v. U.S.,* 656 F.2d 360 at 363 (8th Cir.1981).[1] Conversely, if such a motion would fail, counsel may not be criticized for having accurately assessed his client's chances of successfully challenging the warrant. *United States v. Yelardy,* 567 F.2d 863, 865 n. 1 (6th Cir.), *cert. denied,* 439 U.S. 842, 99 S.Ct. 133, 58 L.Ed.2d 140 (1978). *See also Fornash v. Marshall,* 686 F.2d 1179, 1190 (6th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1439, 75 L.Ed.2d 796 (1983); *Sallie v. State of North Carolina,* 587 F.2d 636, 641 (4th Cir.1978), *cert. denied,* 441 U.S. 911, 99 S.Ct. 2009, 60 L.Ed.2d 383 (1979); *cf. United States v. Zazzara,* 626 F.2d 135, 138 (9th Cir.1980)

(counsel was not ineffective in failing to file an unmeritorious motion to suppress an indictment). Thus, whether trial counsel in the present case acted incompetently in not filing a timely motion to suppress depends upon the merits of the search and seizure question.[2] I emphasize that I reach the search and seizure issue only to discuss whether Worthington's sixth amendment right to effective assistance of counsel was violated. This court rejected the petitioner's fourth amendment claim in its prior opinion.

Worthington contends that the search warrant in this case was insufficiently particular, was overbroad and was based upon an affidavit which relied upon confidential informants who were not shown to be credible or reliable.

The objection to the affidavit will be considered first. The most recent Supreme Court case dealing with the subject of confidential informants is *Illinois v. Gates,* —— U.S. ——, 103 S.Ct. 2317, 76 S.Ct. 527 (1983), which abandoned the course originally charted in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and in *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The lower courts had construed the latter two decisions to require both that confidential informants demonstrate a "basis of knowledge" for their statements and that these informants be shown to possess "veracity" or "reliability." *Gates,* 103 S.Ct. at 2327. The *Gates* Court, while acknowledging that the concepts of "basis of knowledge," "veracity" and "reliability" remain important, nevertheless held that these elements are not separate and independent requirements which must be satisfied in every case. *Id.* at 2327–28. The Court fashioned a new

---

1. In *Brown,* there apparently were no strategic reasons for not filing the suppression motion.

2. I would not follow the Ninth Circuit's approach which excuses a failure to file a motion to suppress where the motion may have been meritorious but where the question was close. *Satchell v. Cardwell,* 653 F.2d 408, 410 (9th Cir.1981), *cert. denied,* 454 U.S. 1154, 102 S.Ct. 1026, 71 L.Ed.2d 311 (1982). If the fourth amendment issue is close and the evidence is

relatively important, the defense is "substantial" and a "lawyer with ordinary training and skill in the criminal law," *Beasley v. United States,* 491 F.2d 687, 696 (6th Cir.1974), normally would assert it. Absent overriding strategic considerations, counsel is ineffective, regardless of the closeness of the fourth amendment issue, if he does not file a suppression motion which would have been successful.

standard for determining whether information obtained from confidential informants establishes probable cause:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial bases for ... conclud[ing]" that probable cause existed.

*Id.* at 2332.

In the present case, the confidential informants were six of Worthington's former employees. Five of these employees had personal knowledge that the petitioner regularly defrauded the Medicare and Medicaid programs during their periods of employment. Consequently, the basis of knowledge of these employees was exceptionally good. The search warrant covered these respective employment periods. Although the affidavit contained little information concerning the veracity or reliability of these employees, the very existence of numerous informants, all of whom supplied information concerning fraudulent Medicare and Medicaid practices, bolstered the credibility of each. Moreover, the credibility of "confidential source # 3" was supported by the findings of a named Blue Cross/Blue Shield auditor. Finally, I am of the opinion that any lack of information concerning the credibility and reliability of these informants was adequately compensated for by the excellent basis of knowledge possessed by each employee. *Gates,* 103 S.Ct. at 2329.

I would hold, therefore, that the magistrate had a substantial basis for concluding, under the totality of the circumstances, that all of the petitioner's Medicare and Medicaid records constituted evidence of

crime. It is well established that if an affidavit contains employee averments that fraudulent Medicare and Medicaid practices were regularly pursued during a particular time period or periods, all Medicare and Medicaid records for those periods may be seized. *See United States v. Abrams,* 615 F.2d 541, 545 (1st Cir.1980); *cf. Andresen v. Maryland,* 427 U.S. 463, 480–81 n. 10, 96 S.Ct. 2737, 2748 n. 10, 49 L.Ed.2d 627 (1976) and *United States v. Wuagneux,* 683 F.2d 1343, 1349 (11th Cir.1982) (where probable cause indicates the existence of a complex fraudulent scheme, the search warrant may authorize the government to seize enough evidence to obtain a complete picture of the defendant's scheme).[3]

The petitioner's second argument is that since the search warrant did not describe the things to be seized with sufficient particularity, it was a prohibited general warrant. The search warrant ordered any United States postal inspector to seize the following items:

> All patient treatment records and charge slips; all patient ledger cards; the general ledger(s) containing record of payments made to employees, laboratories, etc.; all x-ray films; and other fruits, instrumentalities and evidence of crime at this time unknown, covering the period from July 1973 to the present....

Although I agree with the petitioner (for reasons to be discussed shortly) that this language was overbroad, I do not agree that this warrant was a general warrant. A general warrant permits general exploratory rummaging through a person's belongings. *See, e.g., Andresen,* 427 U.S. at 480, 96 S.Ct. at 2748; *United States v. Christine,* 687 F.2d 749, 752 (3d Cir.1982). Such a warrant violates the particularity requirement in two respects: It permits the seizure of items where the warrant actually describes others and it gives law enforcement officials discretion to determine what objects will be seized and what objects will

---

**3.** The petitioner also contends that the affidavit for search warrant did not establish that his medical records would be found at 1029 Whitney Avenue, Memphis, Tennessee. This point

was raised on direct appeal but was not mentioned in either the original or amended motion to vacate sentence. Accordingly, this additional argument will not be considered.

not. *See, e.g., Andresen,* 427 U.S. at 480, 96 S.Ct. at 2748; *Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927); *Christine,* 687 F.2d at 752; *United States v. Cardwell,* 680 F.2d 75, 77 (9th Cir.1982).

Although the search warrant under review was quite broad in scope, it was not a general warrant because it gave the postal inspectors no discretion to determine what items would be seized. The warrant in effect ordered the inspectors to seize *all* of Worthington's medical records; they were not given authority to pick and choose. Moreover, since the warrant mandated the seizure of all medical records, the inspectors could not have seized records which were not described by the warrant. Under these circumstances, the issue is whether such expansive language was supported by probable cause and not whether the magistrate approved a general warrant. *See United States v. Riggs,* 690 F.2d 298, 299 (1st Cir. 1982); *Christine,* 687 F.2d at 753; *United States v. Brien,* 617 F.2d 299, 306 (1st Cir.), *cert. denied,* 446 U.S. 919, 100 S.Ct. 1854, 64 L.Ed.2d 273 (1980); *In Re Lafayette Academy, Inc.,* 610 F.2d 1, 5–6 (1st Cir. 1979).[4]

The cases cited by the petitioner on this point either support the government's position or are distinguishable. In the latter category is *Cardwell, supra,* which involved a search warrant containing no time limitation and not revealing the particular crime for which evidence was being sought. The present warrant contains a time limitation. Worthington has not argued the latter point. In *Abrams, supra,* the search warrant authorized the seizure of "certain" records which were evidence of fraudulent Medicare and Medicaid practices. Since the

officials executing the warrant were given no guidance about what constituted fraudulent records, they had unfettered discretion to decide which items to seize. No such determinations were required of the postal inspectors in the current case. Both *Montilla Records of Puerto Rico, Inc. v. Morales,* 575 F.2d 324 (1st Cir.1978) and *United States v. Drebin,* 557 F.2d 1316 (9th Cir. 1977), *cert. denied,* 436 U.S. 904, 98 S.Ct. 2232, 56 L.Ed.2d 401 (1978), involved seizures of materials reproduced in violation of the copyright laws. In both cases, law enforcement officials received inadequate guidance concerning how to identify illegally reproduced materials. The officials therefore had discretion to seize some materials and not others. In contrast, the postal inspectors in the present case clearly were instructed to seize all medical records.[5]

Although the search warrant under consideration was not a general warrant, it nevertheless was overbroad. The warrant authorized the postal inspectors to seize, and they did seize, practically all of the petitioner's medical records. The supporting affidavit, however, established probable cause to seize only Worthington's Medicare and Medicaid records.[6] Though the non-Medicare and non-Medicaid records were not admitted into evidence at trial, the issue remains whether the seizure of the Medicare and Medicaid records, which was supported by probable cause, is severable from the other seizures for which probable cause was lacking.

This circuit has been joined by several others in approving the concept of severance. *United States v. Thompson,* 612 F.2d 233, 234 (6th Cir.1979); *Riggs,* 690 F.2d at 300; *Christine,* 687 F.2d at 754–59; *Cardwell,* 680 F.2d at 78; *United States v. Cook,*

---

4. The phrase, "and other fruits, instrumentalities and evidence of crime at this time unknown," does not render the warrant insufficiently particular. *See Andresen,* 427 U.S. at 479–82, 96 S.Ct. at 2748–49.

5. *Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979) and *Stanford v. Texas,* 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965), both involved first amendment considerations not present here.

The *Stanford* case distinguished books used for record-keeping purposes from books containing ideas protected by the first amendment. 379 U.S. at 485 n. 16, 85 S.Ct. at 511 n. 16.

6. The government conceded on direct appeal (appellee's brief at 51, n. 44) that there was not probable cause to seize more than the Medicare and Medicaid records. It has not attempted to retract this concession on collateral review.

657 F.2d 730, 735 (5th Cir.1981); *Vonder-Ahe v. Howland,* 508 F.2d 364, 372 (9th Cir.1974). A dispute exists, however, concerning the mechanics of how the severance doctrine is to be applied.[7] The majority of courts examine the warrant's language. Those clauses and phrases that are supported by probable cause are severed from those that are not. Evidence seized under valid language is admitted while evidence seized under invalid portions of the warrant is suppressed. *Riggs,* 690 F.2d at 300; *Christine,* 687 F.2d at 754–59; *Cook,* 657 F.2d at 734–36. In contrast, one circuit directly evaluates whether there was probable cause to seize the particular evidence that the defendant wishes to suppress. *VonderAhe,* 508 F.2d at 372.[8] This distinction is crucial in the present case because all of the search warrant language is overbroad. The weight of current authority would require the Medicare and Medicaid records to be suppressed; for although the government had probable cause to seize those records, they were seized under invalid warrant language. The *VonderAhe* decision would, of course, permit the records to be admitted. The conflict between approaches to applying the severance doctrine is not addressed by the majority opinion, which cites only *VonderAhe.* I believe that the parties are entitled to an explanation of why the *VonderAhe* approach is the proper one.[9]

The Third Circuit in *Christine* identified five purposes traditionally held to be served by the warrant requirement. First, the requirement forces the government to show probable cause to search before it invades a citizen's privacy. Second, the warrant procedure interposes a neutral and objective judicial officer between citizens and law enforcement officials involved in the often competitive enterprise of ferreting out crime. Third, the terms of a warrant limit the scope of the search. Fourth, a warrant notifies the subject of the search of the government official's authority to search and the extent of that authority. Finally, the warrant procedure generates a record susceptible to review. 687 F.2d at 756–57. The court concluded that its approach to severance served all of these purposes. *Id.* at 758.

It should initially be noted that the Third Circuit did not state that the *VonderAhe* decision failed to serve the first, second, third and fifth purposes listed above. As noted in the discussion of *Illinois v. Gates, supra,* the affidavit clearly established probable cause to seize the Medicare and Medicaid records. *Compare Christine,* 678 F.2d at 758. The affidavit was reviewed by a neutral and objective magistrate who issued the warrant. Moreover, even though the language of the warrant was broader than the underlying showing of probable cause, the warrant was particular. Hence, its terms limited the scope of the search to the objects or items described. *Id.* Furthermore, the severance process does not affect the availability of a record for appellate review. *Id.*

In criticizing *VonderAhe,* the Third Circuit stated that the Ninth Circuit's approach permits *de novo* appellate review of

---

7. Our decision in *Thompson* is not helpful on the question of mechanics. It should be noted that although the panel in *Thompson* reversed itself on rehearing, it did so on grounds other than the propriety of severance.

8. Although certain language in the Ninth Circuit's *Cardwell* case is more akin to the majority approach than to the *VonderAhe* approach, 680 F.2d at 78–79, *Cardwell* nevertheless cited *VonderAhe* in approving fashion. *Id.* The Third Circuit in *Christine* expressly rejected the *VonderAhe* approach, 687 F.2d at 759, but acknowledged that *VonderAhe* remains viable. *Id.* at 755. Consequently, I conclude that *VonderAhe* retains precedential value.

9. I am cognizant of the general rule that overbroad search warrant language may be cured if the affidavit establishing probable cause is attached to the warrant and if the warrant incorporates the affidavit by suitable reference. *See, e.g., Cook,* 657 F.2d at 735–36; *Lafayette Academy,* 610 F.2d at 4 (and cases cited therein). Although the search warrant under review refers to the affidavit, the record does not disclose whether the affidavit was affixed to the warrant when the search occurred. On this state of the record, therefore, the government may not avail itself of this rule.

the government's arguments for a search and seizure rather than only limited review of the magistrate's assessment of probable cause. This conclusion is erroneous, as is demonstrated by the fact that the previous discussion of probable cause reviewed the magistrate's finding under the standard set forth in *Illinois v. Gates.*

Second, the Third ·Circuit held that the *VonderAhe* approach to severance violates the Warrant Clause's notification principle:

> [I]n failing to demand that the warrant be valid in significant measure . . ., the *VonderAhe* approach offends the notification principle of the warrant clause by not ensuring that the subject of the search receives notice of the officer's lawful authority to search. Under *Vonder-Ahe,* the warrant served upon a person could be completely invalid and yet evidence seized in the search may be admitted on the basis of an affidavit that the person never saw until after the search had been completed.

*Christine,* 687 F.2d at 759.

The Third Circuit neglected to mention, however, that its application of the severance doctrine also violates the notification principle. In *Christine,* the search warrant contained both valid and invalid clauses. This was not known at the time of the search, however, because that determination occurred only later. Consequently, the warrant as it stood at the time of execution notified the subject of the search that government officials possessed authority to conduct a search of much greater magnitude than was in fact permissible. The same occurred, of course, in the present case.

I am of the opinion that severing searches that are based upon probable cause from those not so grounded will violate the notification principle regardless of which approach to severance is adopted. The real issue is whether evidence seized pursuant to probable cause may be admitted under that circumstance. This circuit, and every other circuit that has considered the severance question, has held that severance is permissible. I would adhere to those decisions.

In reaching that conclusion, however, it is irrelevant whether the entire warrant is overbroad, although partially based upon probable cause, or whether the warrant is divisible into various clauses and phrases, some of which are grounded upon probable cause and some of which are not. The essence of the severance doctrine is that evidence seized pursuant to probable cause should be admissible even if the language of the search warrant is not fully supported by probable cause. Unlike the *Christine* decision and other cases like it, the. *Vonder-Ahe* approach assures that such evidence will be admissible. Accordingly, I would adopt the *VonderAhe* method of applying the severance doctrine and would hold that the petitioner's Medicare and Medicaid records were properly admitted into evidence. Since a timely suppression motion would have been unmeritorious, Worthington's trial counsel was not guilty of ineffective assistance in failing to file one.

For these reasons, I concur in the majority's decision to affirm the judgment of the district court.