**UNITED STATES of America, Plaintiff,**

v.

**1328 NORTH MAIN STREET, DAYTON, OHIO 45405, Defendant.**

**Nos. MS 3-84-60, 84-135M.**

United States District Court, S.D. Ohio, W.D.

April 2, 1986.

D. Michael Crites, Asst. U.S. Atty., Dayton, Ohio, for plaintiff.

Konrad Kuczak, Dayton, Ohio, for defendant.

DECISION AND ENTRY REJECTING REPORT AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE; EVIDENTIARY HEARING SET; PLAINTIFF'S MOTION FOR AN ORDER PERMITTING DISCLOSURE OF DOCUMENTS (DOC. # 23) SUSTAINED

RICE, District Judge.

This case comes before the Court for resolution of the objections of Thomas H. McCarthy, D.O., to the Report and Recommendation of United States Magistrate Merz.

At 9:45 a.m. on September 7, 1984, agents of the Federal Drug Enforcement Agency (DEA) obtained from United States Magistrate Steinberg a warrant to search the premises at 1328 North Main Street in Dayton, described as the offices and related facilities of Dr. McCarthy. DEA agents, accompanied by state and local authorities, executed the warrant between 11 a.m. and 3:45 p.m. on September 7, 1984. At 1:46 p.m. on September 7, 1984, Dr. McCarthy filed a motion styled "Motion to Quash Search Warrant, Application for Protective Order and Motion for Return."

Hearings were held before Magistrate Steinberg on September 10 and September 11. Treating Dr. McCarthy's motion as a Motion for Return of Property Pursuant to Fed.R.Crim.P. 41(e), Magistrate Steinberg stated on the record that the warrant which he had issued was supported by probable cause (Tr. 50),[1] and directed the parties to brief other issues raised by Dr. McCarthy. On September 11, 1984, Magistrate Steinberg ordered the United States to deliver to Dr. McCarthy by September 14, 1984, copies of all the documents seized pursuant to the September 7 search. Upon an amendment by Magistrate Steinberg of this Order, the United States returned to Dr. McCarthy on September 13 and September 17 both certain original documents seized from his office and copies of the remainder of the documents which had been seized.

On December 11, 1984, Dr. McCarthy filed a motion seeking that Magistrate Merz, who had taken over the case from Magistrate Steinberg, hold a hearing and a conference to set the ground rules for resolution of his motion. On February 6, 1985, Dr. McCarthy moved for an oral hearing to be held on whether unlawful electronic eavesdropping devices had been used in connection with the affidavit underlying the search warrant for his premises.

Magistrate Merz declined to hold a hearing on Dr. McCarthy's motion. In a Report and Recommendation issued on August 6, 1985, Magistrate Merz denied Dr. McCarthy's Application for an Oral Hearing on the issue of use of unlawful electronic surveillance devices. Adopting Magistrate Steinberg's finding, on the record, of probable cause, Magistrate Merz recommended that Dr. McCarthy's Motion to Quash Search Warrant and Motion for Return of Property be denied. As the Government had not opposed Dr. McCarthy's Application for Protective Order, the Magistrate recommended that the DEA be ordered to refrain "from sharing, divulging, distribut-

---

**1.** Transcript references refer to the transcript of the hearings before Magistrate Steinberg on September 10–11, 1984.

ing, disseminating or revealing any patient medical records and records of any communications made to a physician seized under the search warrant issued in this case, to any other agency, person, or police department, pending further order of this court." (Doc. # 17 at 7). The Magistrate also recommended denial of Dr. McCarthy's claim for damages for losses sustained due to seizure of his records.

Dr. McCarthy has filed objections to the Magistrate's Report (Doc. # 19). The United States has moved for an Order to permit it to reveal to two individuals all documents seized from Dr. McCarthy (Doc. # 23). For the reasons set forth herein, this Court rejects the Report and Recommendation of Magistrate Merz and orders that an evidentiary hearing be held in this cause. The Court sustains the motion of the United States to reveal to the two individuals named in the motion the documents seized from Dr. McCarthy's office on September 7, 1984.

### A. *Rule 41(e) Motion to Return*

█ Magistrate Steinberg's decision to treat Dr. McCarthy's motion as a Rule 41(e) motion was based on his observation that motions to quash search warrants are not mentioned in the federal rules. (Tr. 3). Dr. McCarthy raised Rule 41(e) in the body of his September 7, 1984 motion as the authority for his Motion to Return. He also urges in his brief that the documents seized from his office be suppressed and that a protective order be issued to prevent either federal, state or local authorities "from using the unlawfully gained information in any manner in any proceeding." (Doc. # 11 at 43). After examining Dr. McCarthy's pleadings and the relief which he seeks, this Court agrees that Dr. McCarthy's pursuit of relief is governed primarily by Rule 41(e). *Accord Imperial Distributors, Inc. v. U.S.*, 617 F.2d 892, 895 (1st Cir.1980).

A person lawfully entitled to property may file a Rule 41(e) motion in district court, alleging that his property was taken by means of an illegal search and seizure.

The court is authorized to receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted, Rule 41(e) provides that the property is to be restored [to the person entitled to its possession] and that it is not to be admissible in any hearing or trial. Rule 41(e) also provides that if an indictment or information is filed before a hearing is held on the motion to return, that the motion to return is to be treated in that situation as a motion to suppress evidence. The Court gleans from the rule and from the case law that a ruling on the merits of a Rule 41(e) motion seeking suppression as well as return of property must embrace in its analysis the various dimensions of the exclusionary rule. *In Re Motion to Quash Grand Jury Subpoena*, 593 F.Supp. 184, 192 (S.D.W.Va. 1984), *appeal dismissed sub. nom. United States v. Regional Consulting Services*, 766 F.2d 870, 873 (4th Cir.1985); *United States v. Mid-States Exchange*, 620 F.Supp. 358, 359 (D.S.D.1985).

█ In some jurisdictions, a motion to return prior to "any suggestion of criminal proceedings" has been viewed as an equitable proceeding rather than as strictly a Rule 41(e) motion. *Richey v. Smith*, 515 F.2d 1239, 1245 (5th Cir.1975). The return of property under such an equitable theory does not require suppression, leaving suppression to be raised should any criminal proceeding result. *Id.* The Sixth Circuit has not, to this Court's knowledge, expressly adopted such a theory of equitable jurisdiction, and has shown no discomfort with Rule 41(e) motions brought by individuals prior to any indictment in an effort both to regain their seized property and to prevent the admissibility in evidence of such property in a later hearing or trial. *Sovereign News Co. v. United States*, 690 F.2d 569, 571 (6th Cir.1982); *United States v. Giacalone*, 541 F.2d 508, 512 (6th Cir.1976) ("... the grant of a motion for return of seized property serves not only to restore possession of property to its owner but also serves as a ruling that the search and seizure were illegal and" that the fruits of the search are inadmissible in any proceed-

ing such as trial upon the merits held subsequent to the indictment. The ruling is binding upon all courts in future criminal litigation.) Consequently, a ruling on Dr. McCarthy's motion is not "non-ripe" because he has not yet been indicted; nor is such a ruling to be rendered moot by any subsequent indictment. *See also United States v. Modern Bookkeeping*, 780 F.2d 1023 (6th Cir.1985).

## B. Challenge to Affidavit Underlying the Warrant

■ In his brief, Dr. McCarthy attacks the validity of the search by challenging the affidavit underlying the search warrant for his premises. He contends that the DEA agent who swore to the affidavit knowingly concealed from the Magistrate certain facts about Dr. McCarthy's method and approach in dispensing controlled substances. Such deletions were made, he argues, in order to persuade the Magistrate that probable cause existed as to Dr. McCarthy's violation of the federal narcotics laws, whereas a complete statement of the available facts would have dispelled such an indication of probable cause.

In *Franks v. Delaware*, 438 U.S. 154, 155–56, 198 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978), the Supreme Court held that upon a substantial preliminary showing by a defendant that a false statement, necessary to a finding of probable cause, was included by the affiant in a written affidavit in support of an application for a warrant, either knowingly and intentionally or with reckless disregard for the truth, the defendant was entitled to receive an evidentiary hearing.[2] Suppression is an appropriate remedy if the defendant prevails at the hearing and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause. *United State v.*

*Leon*, 468 U.S. 897, 104 S.Ct. 3405, 3421, 82 L.Ed.2d 677 (1984); *Franks*, 438 U.S. at 156, 98 S.Ct. at 2676.

This Court finds Dr. McCarthy to have made a sufficiently substantial preliminary showing to require an evidentiary hearing on the issue of probable cause. The Court does not believe the conclusion of Magistrate Steinberg, during the initial hearings on this matter, as to the existence of probable cause to be sufficient for purposes of the *Franks* inquiry (Tr. 50). Dr. McCarthy had not at that time had the opportunity to brief the issues of deficiencies in the affidavit, and the Court believes an evidentiary hearing to be required by the reasoning included in his brief.

## C. General Warrant

■ Dr. McCarthy also argues in his brief that the search of his office premises was illegal because the warrant obtained by the DEA from Magistrate Steinberg was a general warrant. For the reasons set forth herein, this Court cannot agree that the warrant in this case was a general warrant.

In order to protect against unrestricted searches of a person's premises, the fourth amendment requires that search warrants describe with particularity the items to be seized. *Marron v. United States*, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927). A general warrant, containing only vague descriptions of the items to be seized, violates the particularity requirement in two ways. It permits the seizure of items where the warrant actually describes others, and it gives discretion to law enforcement officials to determine what objects will be seized and what objects will not. *Worthington v. United States*, 726 F.2d 1089,

**2.** In *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court again considered the subject of search warrant procedures, which had been at issue in *Franks*. It was in *Gates* that the Supreme Court re-established that a "totality of the circumstances" analysis is to be employed in the determination of probable cause. The Sixth Circuit held in

*United States v. Jenkins*, 728 F.2d 396, 397 (6th Cir.1984), that nothing in *Gates* vitiates the *Franks* standard for challenges to an affidavit. The *Jenkins* court also indicated that the *Gates* definition of probable cause would be the proper standard for the district court's exploration of the probable cause issue in an evidentiary hearing conducted pursuant to *Franks*.

1094–95 (6th Cir.1984) (Contie, J. concurring).

Dr. McCarthy, in support of his contention that the warrant in this case was a general warrant, cites cases such as *United States v. Cardwell*, 680 F.2d 75 (9th Cir.1982), where the warrant asked for seizure of "corporate books and records, including but not limited to cancelled and duplicate checks, check stubs, journals, ledgers, weekly summaries, driver trip envelopes, and daily schedules ... which are the fruits and instrumentalities" of tax evasion. In *United States v. Abrams*, 615 F.2d 541, 542 (1st Cir.1980), a warrant authorizing seizure of "evidence of a crime, to wit, certain business and billing and medical records ... which show actual medical services performed and fraudulent services claimed to have been performed" was found to be a general warrant. In both cases the characterization of the quoted warrants as general warrants turned on the finding that, as the warrants failed to describe the specific records to be seized, the officers executing the warrants had unfettered discretion to seize what they pleased. Another factor believed relevant in the general warrant analysis in *Cardwell* and *Abrams* was the absence of a time limitation in the warrants, which would have at least limited the seizure of documents to those documents generated before, between or after specified dates.

The warrant for the search of Dr. McCarthy's office premises provided authorization for the search and seizure of the following:

Records, files, charts, official order forms, purchase invoices, sample invoices, prescriptions, copies of prescriptions,

appointment records, billing records for health insurance charges, dispensing records, inventories, all documents required to be made or kept under the Controlled Substance Act of 1970 (P.L. 91–513), together with other fruits, instrumentalities, and evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846.

Unlike the language of the warrants in *Cardwell* and *Abrams*, the warrant in this case did not merely request "certain" documents which could be evidence of a particular crime or a generic, open-ended list of records possibly related to a statutory violation. Rather, it spelled out in detail the types of documents to be seized.[3] The difficulty with this warrant is not that it left the executing officers with unfettered discretion as to what to seize; instead, its language indicates that *all* of the types of records described in the warrant and found in Dr. McCarthy's office were to be seized. The inclusiveness of the warrant, rather than its tolerance of impermissible discretion due to lack of particularlity, was the hallmark of the instant warrant. *United States v. Savoca*, 761 F.2d 292, 299 (6th Cir.1985) (no general warrant found where warrant specified that any and all "weapons", "disguises", "U.S. currency" and "fictitious identification" were to be seized); *Worthington v. United States*, 726 F.2d at 1095 (Contie, J. concurring).

Although both the affidavit underlying the warrant in this case, and the government's brief (Doc. # 9 at 11), indicate that the period from 1981 through 1984 is the time frame relevant to the DEA's investigation of Dr. McCarthy, the warrant itself included no such time limitation.[4] Dr.

---

**3.** The phrase "together with other fruits, instrumentalities, and evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846" does not render the warrant insufficiently particular, given the particularity with which the preceding portion of the warrant describes the things to be seized. *Andresen v. Maryland,* 427 U.S. 463, 479–82, 96 S.Ct. 2737, 2748–49, 49 L.Ed.2d 627 (1976).

**4.** The government suggests in its brief (Doc. # 9 at 7–8) that the particularity required for the warrant may be provided by the specific details included in the affidavit. The general rule appears to be that when a warrant is accompanied by an affidavit that is incorporated by reference, the affidavit may be used in construing the scope of the warrant. *United States v. Johnson,* 690 F.2d 60, 64 (3d Cir.1982); *Matter of Property, Etc.,* 644 F.2d 1317, 1318 (9th Cir.1981). Professor Wayne LaFave suggests in his treatise that "[a]t a minimum, it must appear that the executing officer had the affidavit with him and made reference to it." W. LaFave, Search and Seizure, § 4.6 at n. 23 (1978).

It is unclear to the Court, from the record, whether the officers who executed the warrant

McCarthy urges that, under *Cardwell* and *Abrams,* the omission renders the warrant a general warrant. In this case, however, unlike *Cardwell* and *Abrams,* the warrant described with particularity those records which were to be seized. The difficulty with the warrant was not that it provided room for impermissible discretion, but that it was quite broad in scope in authorizing that all of those particular varieties of documents be seized. In this context, the absence of a time limitation reinforces the inclusive nature of the warrant, as it provided for seizure of *all* documents, regardless of the date, of the type described in the warrant. Indeed, the gravamen of Dr. McCarthy's challenge to the search is precisely that the executing officers seized nearly every document in his office.

 The foregoing analysis, while leading to a conclusion that the warrant in this case was not a general warrant, underscores two issues to be addressed at the probable cause hearing ordered *supra* in Part B. As the warrant in this case was inclusive in nature, the relevant issue becomes whether there was probable cause to support a search of the breadth authorized by the warrant. *United States v. Savoca,* 761 F.2d at 299. The "good faith" exception to the exclusionary rule is applicable in the determination of whether the breadth of the search authorized by the warrant requires suppression. *Id.* (citing *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). That is, if probable cause sufficient to support the breadth of the warrant were not found, the

issue would become whether a reasonably well-trained officer could have believed that such probable cause existed.

 The other issue relevant to the evidentiary hearing is Dr. McCarthy's contention that the officers who executed the warrant seized items which were outside the scope of the warrant. Assuming such a showing can be made, suppression of such items is an available remedy. Absent a showing of a flagrant disregard for the limitations of the warrant, however, a showing that some items outside the scope of the warrant were seized does not require suppression of the contemporaneously seized items which were within the scope of the warrant. *United States v. Lambert,* 771 F.2d 83, 93 (6th Cir.1985); U.S. appeal pending; *United States v. Heldt,* 668 F.2d 1238 (D.C.Cir.1981), *cert. den.* 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982).[5]

### D. *Dr. McCarthy's Application for Oral Hearing Re: Unlawful Electronic Surveillance (Doc. #14)*

 Dr. McCarthy alleges in his brief that his office premises contained both a front door and a back door, and, given that the DEA agents observed only the rear door, that the affidavit must be faulty in its assertions as to when Dr. McCarthy was absent from his premises. (Doc. #11 at 12–13). Dr. McCarthy further pursues this allegation in his Application for Oral Hearing (Doc. #14). He alleges therein that unlawful electronic surveillance equipment must have been used in procuring the infor-

could have had the affidavit in their possession. Gerald Kopp has attested that Dr. McCarthy's office was searched between 11 a.m. and 3:45 p.m. on September 7, 1984. The government filed its motion to seal the affidavit at 2:01 p.m. on September 7. The motion was sustained by Magistrate Steinberg. The affidavit bears the case number 84–134M. The warrant indicates that the affidavit was not attached and incorporated thereto, but rather that it (the affidavit) was attached to the warrant in Case No. 84–134M.

5. The Court notes Dr. McCarthy's contention, supported by affidavits, that the officers who executed the warrant used excessive force and otherwise acted improperly in carrying out the

search. There are some intimations in the published case law to the effect that the manner in which a warrant was executed can be found constitutionally "unreasonable," even if the conduct did not rise to the shocking level of a due process violation. *United States v. Penn,* 647 F.2d 876, 882–83 (9th Cir.1980). Suppression of evidence might be available for this type of fourth amendment violation, depending on the facts and circumstances of a particular search. *Id.* The Court is doubtful, after scrutiny of the record, that Dr. McCarthy can establish such a level of improper conduct so as to require suppression. Nonetheless, this line of argument cannot be foreclosed to him at the evidentiary hearing.

mation for the affidavit, given the deficiencies of the DEA method of observation and the indictment of Dayton police detective Jerry Koenig by a Montgomery County Grand Jury for use of unlawful electronic surveillance equipment. Detective Koenig was involved, at least to a limited extent, in the surveillance of Dr. McCarthy's premises.

This Court agrees with Magistrate Merz (Doc. # 17 at 8) that the mere fact that Detective Koenig was involved in the instant case is insufficient to indicate that the information sworn to in the affidavit was procured through the use of illegal electronic surveillance techniques. Dr. McCarthy would not be entitled to a hearing simply on the basis of such allegations. At the same time, Dr. McCarthy is free, at the evidentiary hearing on the issue of probable cause ordered *supra* in Part B, to attack the affidavit on the basis that Dr. McCarthy was not, as the affidavit alleges, absent from his premises at certain times when controlled substances were being dispensed. This Court does not find currently in the record any affidavit from Dr. McCarthy that he was in fact on his premises at times when the DEA method of surveillance would have indicated that he was absent. To the extent that such evidence is in fact available, Dr. McCarthy may present it at the evidentiary hearing.

### E. *Motion of United States to Disclose Seized Records (Doc. # 23)*

As the Government made no objection to Dr. McCarthy's Application for a Protective Order, the Magistrate recommended that the DEA be ordered to refrain from disclosure of the seized materials pending further order of the Court. (Doc. # 17 at 7). The United States now moves for an Order to disclose Dr. McCarthy's records to Joseph Zabik, Ph.D., and Ross Egger, M.D. The Government represents to this Court that "[s]aid disclosure is necessary to allow the United States to continue its investigation into the alleged criminal activity of Dr. Thomas D. McCarthy, D.O." (Doc. # 23 at 2). The Government also represents that

Drs. Zabik and Egger have already agreed to keep all records under "lock and key" while in their custody and have agreed not to share the contents of the records with any other agencies other than the DEA and the United States Attorney's Office. (Doc. # 23 at 2).

Dr. McCarthy has not presented the Court with sufficient reasons to prohibit the disclosure sought by the Government. While Dr. McCarthy may well prevail on his Motion to Return, the Supreme Court has made it clear that the remedy of suppression does not reach to all aspects of the criminal process. Even should the Government's investigation of Dr. McCarthy result in an indictment, the general rule is that the validity of an indictment is not affected by the conclusion that it is based on evidence obtained in violation of the fourth amendment or on questions based on that evidence. 1 C. Wright, Federal Practice and Procedure, Criminal 2d, § 111 at 310 (1980). In *United States v. Calandra,* 414 U.S. 338, 354, 94 S.Ct. 613, 622, 38 L.Ed.2d 561 (1974), the Supreme Court observed that "an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence." *See also Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956). The Court concludes that, on the protective conditions outlined by the Government in its motion, the United States should be permitted to disclose Dr. McCarthy's records to the two individuals named in its motion.

### F. *Dr. McCarthy's Pursuit of Damages*

Dr. McCarthy has moved for an Order requiring the Government to pay compensation in the sum of $750 per day as of September 7, 1984, for each day that the Government was out of compliance with this Court's Order to induce the prompt and speedy return of copies of Dr. McCarthy's documents. (Doc. # 5). Although Magistrate Merz recommended that said Motion for Damages be denied, this Court defers any ruling on damages until the

substantive issues raised by Dr. McCarthy with respect to the warrant and the search have been resolved.

### G. *Summary*

In conclusion, this Court rejects the Report and Recommendation of the United States Magistrate, and orders that an evidentiary hearing be held in this matter. As outlined *supra*, the following issues will be covered at the hearing:

(1) Whether there were intentional or reckless omissions (or falsehoods) in the affidavit, such as whether Dr. McCarthy was absent from his premises at certain times, and, if so, whether the affidavit's remaining content was sufficient to establish probable cause (p. 1073, 1075–1076);

(2) Whether there was probable cause to support a search of the breadth authorized by the warrant (p. 1073–1075);

(3) Whether the officers executing the warrant seized items from Dr. McCarthy's premises which were outside the scope of the warrant (p. 1075);

(4) Whether the officers executing the warrant acted so improperly that their conduct was constitutionally unreasonable (p. 1075, n. 5); and

(5) Whether Dr. McCarthy is entitled to damages for the Government's failure to comply with this Court's Order to promptly return his documents (p. 1076–1077).

A telephone conference call will be held on Wednesday, April 9, 1986, at 5 p.m., in order to set the date for a hearing.