**UNITED STATES of America,
Plaintiff,**

v.

**John Richard MAYHEW,
Jr., Defendant.**

**No. 2:03–CR–165.**

United States District Court,
S.D. Ohio,
Eastern Division.

Sept. 27, 2004.

David Devillers, United States Attorney, Columbus, OH, for Plaintiff.

***OPINION AND ORDER***

MARBLEY, District Judge.

## I. INTRODUCTION

This matter is before the Court on the following motions filed by Defendant, John R. Mayhew, Jr.: Motion for a Bill of Particulars on Count One; Motion for a Bill of Particulars on Counts Three, Four, and Five; Motion to Dismiss Count One; Motion to Dismiss Count Six; Motion for Relief from Prejudicial Joinder; Motion to Strike the Nature of His Prior Felony Conviction from Count Two of the Indictment and Prevent the Government from Introducing Evidence as to the Nature of His Prior Felony Conviction; and Motion to Suppress Physical Evidence Seized from 28 N. Princeton Ave. The Court conducted an evidentiary hearing on Defendant's Motion to Suppress on August 6, 2004. For the following reasons, the Mo-

tion for a Bill of Particulars on Counts Three, Four, and Five and the Motion to Strike the Nature of Defendant's Prior Felony Conviction from Count Two of the Indictment and Prevent the Government from Introducing Evidence as to the Nature of the Prior Felony Conviction are **GRANTED**; the remaining Motions are **DENIED**.

## II. BACKGROUND

The essential background facts, as alleged by the government, are as follows. On the night of August 7, 2003, Defendant went to a home at 2258 Springmont Avenue, Columbus, Ohio, where he shot and killed his ex-girlfriend, Tamara McKibben, and her fiancé, Frank Rigsby. While at the residence, he threatened Tamara McKibben's son, Andy Aspell, Jr., with his gun. Defendant then kidnaped his and Tamara McKibben's daughter, Christina McKibben, from the home. Defendant took Christina McKibben with him in his car and drove with her to West Virginia. On August 9, 2003, Defendant, still with Christina McKibben in the car, was pulled over by a West Virginia state trooper for a minor traffic offense. When the officer approached the car, Defendant drew a gun and shot the officer. A 30-minute car chase ensued.

Defendant ultimately was stopped by a roadblock and tire spikes. While police were ordering him to exit the car, Defendant shot Christina McKibben twice, then shot himself once. Police pulled both people from the car, and Christina McKibben told the police that she was from Columbus and that there was a bomb in the car. Two bombs were found under the front seats of the vehicle. Christina McKibben died en route to the hospital. Shortly after his arrest, Mayhew was interviewed by Lieutenant David Livingston of the Greenbrier County Sheriff's Department. Mayhew admitted to having shot Tamara McKibben, Frank Rigsby, the West Virgi-

nia state trooper, and Christina McKibben. He stated that he committed all of these shootings with the Tech-9 weapon recovered at the scene of his arrest. He informed Livingston that there were additional firearms—namely a 12-gauge shotgun and a .22 Magnum Marlin bolt-action rifle—at his home at 28 North Princeton Avenue in Columbus.

On October 2, 2003, the government issued a seven count Indictment charging Defendant with the following offenses:

(1) that he "did willfully and unlawfully kidnap, abduct and carry away Christina McKibben and willfully transport Christina McKibben in interstate commerce from the Southern District of Ohio to the state of West Virginia, and did hold her for ransom, reward or otherwise, resulting in the death of Christina McKibben";

(2) that, having been convicted of a felony in 1992, for the offense of kidnaping with gun specification, he "knowingly possessed a firearm, that is, an Intratec, Model Tec 9, .9mm pistol, the said firearm having been shipped and transported in interstate commerce";

(3) that he "did knowingly transport or receive, in interstate commerce, an improvised explosive device with the knowledge or intent that it would be used to kill, injure, or intimidate any individual or unlawfully to damage or destroy a vehicle, or other real or personal property";

(4) that he "did knowingly possess a firearm, that is, an improvised explosive device, not registered to him in the National Firearms Registration and transfer record as required in 26 U.S.C. § 5841";

(5) that he "did knowingly possess an unregistered firearm, that is, an im-

provised explosive device, not identified by a serial number, as required in 26 U.S.C. § 5842";

(6) that he "did knowingly travel in interstate commerce, with the intent to injure, harass and intimidate ... Christina McKibben ..., and in the course of and as a result of such travel ... placed Christina McKibben in reasonable fear of death and serious bodily injury, and such acts resulted in the death of Christina McKibben"; and

(7) that he "did knowingly use, carry, brandish and discharge a firearm, that is, a pistol, and did knowingly carry an unregistered destructive device, all during and in relation to a crime of violence, for which he may be prosecuted in a court of the United States [for] interstate stalking in violation of 18 U.S.C. § 2261A(1), and in so doing, [he] committed murder ... with malice aforethought, such murder being willful, deliberate, malicious and premeditated."

On February 25, 2004, Defendant filed all of the Motions at issue in this Opinion and Order. The government filed a Consolidated Response on March 19, 2004. On August 6, 2004, the Court conducted an evidentiary hearing on Defendant's Motion to Suppress. The parties submitted post-hearing briefs on August 27, 2004. This matter is now before the Court on the following Motions: (1) Defendant's Motion to Suppress Physical Evidence Seized from 28 N. Princeton Ave.; (2) Defendant's Motion to Strike the Nature of His Prior Felony Conviction from Count Two of the Indictment and Prevent the Government from Introducing Evidence as to the Nature of His Prior Felony Conviction; (3) Defendant's Motion for Relief from Prejudicial Joinder; (4) Defendant's Motions to Dismiss Counts One and Six; and (5) Defendant's Motion for a Bill of Particulars on Count One and Motion for a Bill of Particulars on Counts Three, Four, and Five.

## III. ANALYSIS

### A. Motion to Suppress

Defendant seeks to suppress all physical evidence seized from his home at 28 North Princeton Avenue in Columbus. The evidence was seized pursuant to a search warrant issued and executed in the early morning hours of August 10, 2003. The search warrant was ordered by Franklin County Municipal Court Judge Harland Hale on the affidavit of Columbus Police Department Detective Kathie Justice. Justice never interviewed Mayhew; instead, she spoke by telephone with Livingston, who had interviewed Mayhew following his arrest in West Virginia. Justice testified at the hearing before this Court that Livingston told her that Mayhew had told him that both firearms and explosives could be found at 28 North Princeton Avenue. The contemporaneous notes that Justice generated during this conversation support her contention. It is undisputed, however, that Mayhew did not actually tell Livingston that there were explosives at his home; he told Livingston only that he had firearms stored at his home.

After speaking with Livingston, Justice prepared her search warrant affidavit, which states, "[A]fter being read his Constitutional Rights, [Mayhew] made the following statement. Mr. Mayhew admitted to committing the double homicide and also stated that at his residence of 28 N. Princeton Ave. there are more guns and explosives." Justice concluded the search warrant affidavit by stating, "Therefore, a search warrant is requested for 28 N. Princeton Ave. to locate any more firearms and explosives that Mr. Mayhew have [sic] as well as his computer, which may have information concerning his relationship

with the victim." The warrant authorized the government to search "[f]or articles of property used as a means of the commission of a crime, property which may identify or trace the suspect or victim together with other fruits, instrumentalities and evidence of the crime of Aggravated Murder section number 2903.01(A) of the Ohio Revised Code, at this time unknown."

■ In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court held that a search warrant "must be voided" if, after a hearing, the defendant establishes by a preponderance of the evidence that (1) "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," and (2) "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause." *Franks* at 155–56, 98 S.Ct. 2674; *accord United States v. Keszthelyi*, 308 F.3d 557, 566 (6th Cir.2002). When an affidavit is based on information obtained from a government official, *Franks* suppression may be appropriate if either the affiant or the government informant knew that the information provided was false or recklessly disregarded its falsity. *United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir.1997); *United States v. Wapnick*, 60 F.3d 948, 956 (2d Cir.1995); *United States v. DeLeon*, 979 F.2d 761, 764 (9th Cir.1992); *United States v. Delgado*, 121 F.Supp.2d 631, 640–41 (E.D.Mich.2000); *see also Franks*, 438 U.S. at 171, 98 S.Ct. 2674 ("The deliberate falsity or reckless disregard whose impeachment is permitted today is only that

of the affiant, not of any *nongovernmental* informant.") (emphasis added).

Defendant contends that Livingston either lied or acted with reckless disregard for the truth when he told Justice that Mayhew had admitted to the presence of explosives at his home. Defendant asserts that the false statement thus must be excised from the search warrant affidavit. According to Defendant, once the words "and explosives" are removed from the affidavit, the affidavit is insufficient to establish probable cause. Defendant argues that the evidence seized, therefore, must be suppressed. In the alternative, Defendant contends that the search warrant violated the Fourth Amendment because it did not describe with particularity the items to be seized; instead, it was a forbidden "general warrant." In his initial Memorandum, Defendant also argues that most of the evidence seized had no obvious nexus to the crimes with which he was charged and therefore should be suppressed.

The United States concedes that the affidavit contained false information but argues that, even if that information is deleted from the affidavit, the government still had probable cause to search Defendant's residence. The United States argues, alternatively, that the warrant is valid under the good faith exception set forth in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

■ Excising the words "and explosives" from the search warrant affidavit, Defendant has not established that the government lacked probable cause to search his home.[1] *See Franks*, 438 U.S. at

---

1. Because of the Court's decision that, even without the false information, the search warrant affidavit supports a finding of probable cause, the Court need not determine whether Defendant has established, by a preponderance of the evidence, whether the false state-ment was made either knowingly or intentionally or with reckless disregard for the truth. The Court also need not determine whether, as argued by the government, *Leon's* good faith exception applies here.

156, 98 S.Ct. 2674 (stating that suppression may be warranted if, "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause"). As the Supreme Court has explained, the standard for probable cause is "whether, given all the circumstances set forth in the affidavit before [the judge], including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *accord Keszthelyi*, 308 F.3d at 567.

Defendant argues that there was little reason to believe that evidence of the crime of aggravated murder would be found at Mayhew's residence. Relying on the proposition that the mere fact that someone is suspected of committing a crime cannot justify a search of his residence, Defendant contends that a search of his home was unlikely to yield evidence of the crime for two reasons. First, a Columbus Police Department detective had already interviewed Mayhew's mother, Verbina Mayhew, and determined that Defendant had not been present at the residence since August 7 at approximately 6:00 p.m., almost four hours before the double homicide at 2258 Springmont Avenue occurred. Second, Columbus Police Department detectives, based on evidence they had gathered, suspected that the murder weapon was a "Tech–9–type." Because Defendant had been arrested in possession of a Tech–9 firearm; because he admitted that that gun was the weapon he had used to shoot Tamara McKibben, Frank Rigsby, Christina McKibben, and himself; and because various evidence revealed that the two guns Defendant admitted to having at his home—a 12–gauge shotgun and a .22 bolt-action rifle—were unlikely to have been the murder weapons, Defendant maintains that no probable cause existed absent the affiant's statements regarding explosives.

The government contends that investigating officers are not bound to place substantial faith in the statements made by either the defendant or the defendant's mother. The government asserts that Defendant could well have returned to his residence following the murders of Tamara McKibben and Frank Rigsby, and that Justice was duty-bound to follow up on the information that Defendant had one or more guns in his home. Given the allegations that Defendant had used firearms to commit at least three murders, the government argues that Defendant's admission that he possessed firearms at his residence was sufficient to establish probable cause that fruits or instrumentalities of the crime would be found there.

The Court agrees that, even absent the words "and explosives," Justice's affidavit was sufficient to establish a "fair probability" that contraband or evidence of a crime would be found at 29 North Princeton Avenue. *Gates*, 462 U.S. at 238, 103 S.Ct. 2317. The government is correct that investigating officers are not required to accept as true the statements of a suspect. The mere fact that Mayhew told police that the Tech–9 they recovered was the weapon he used to commit the murders did not conclusively establish that fact. Indeed, the dictates of good police work required the officers to conduct further investigation to corroborate Defendant's statement. Similarly, the officers were not required to believe Verbina Mayhew's statement that her son had not returned to the residence following the double homicide. Indeed, that statement did not foreclose the possibility that Defendant had returned to the home without his mother's knowledge. In sum, the officers were entitled, under the circumstances, to search

Defendant's home for fruits or instrumentalities of the crime.[2]

Because Defendant has not demonstrated that, after the removal of the false information, the government failed to establish probable cause to search his home, Defendant's Motion to suppress evidence pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), is **DENIED.**

■ Defendant's additional arguments, that the search warrant was impermissibly broad and that most of the items seized had no obvious nexus to the crimes, likewise do not warrant suppression. The Fourth Amendment to the United States Constitution requires a warrant to "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The purpose of this particularity requirement is to prevent the use of general warrants, which can "create a danger of unlimited discretion in the executing officer's determination of what is subject to seizure and a danger that items will be seized when the warrant refers to other items." *United States v. Savoca*, 761 F.2d 292, 298–99 (6th Cir. 1985) (citing *Andresen v. Maryland*, 427 U.S. 463, 480, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976)); *see also United States v. Blakeney*, 942 F.2d 1001, 1026 (6th Cir. 1991) (recognizing that the warrant must enable a searcher reasonably to ascertain and identify the things that are authorized to be seized). "[T]he issue of whether a warrant is general, or lacks the requisite particularity, is best resolved upon examination of the circumstances of the particular case." *United States v. Logan*, 250 F.3d 350, 365 (6th Cir.2001); *see United States v. Campbell*, 256 F.3d 381, 389 (6th Cir.2001) ("[T]his requirement of specifici-

ty is flexible and varies with the crime involved and the types of items sought."); *United States v. Ables*, 167 F.3d 1021, 1033 (6th Cir.1999) (stating that a description is valid "if it is as specific as the circumstances and the nature of the activity under investigation permit") (quoting *United States v. Henson*, 848 F.2d 1374, 1383 (6th Cir.1988)).

The warrant at issue here was not a general warrant; rather, it was "as specific as the circumstances and the nature of the activity under investigation permit[ted]." *Ables*, 167 F.3d at 1033. Defendant, in making the argument that the warrant here was not sufficiently particularized, relies on only one case, *United States v. Clark*, 31 F.3d 831, 836 (9th Cir.1994), which held that the phrase "fruits and instrumentalities of [a] violation of Title 21, U.S.C. § 841(a)(1)" rendered a search warrant facially overbroad. In *Andresen*, however, the Supreme Court rejected the argument that the phrase "together with other fruits, instrumentalities and evidence of crime at this (time) unknown" established the existence of a general warrant. *Andresen*, 427 U.S. at 479–82, 96 S.Ct. 2737. Judge Contie, concurring in *Worthington v. United States*, 726 F.2d 1089, 1095 n. 4 (6th Cir.1984), specifically stated that the phrase "and other fruits, instrumentalities and evidence of crime at this time unknown" did not "render the warrant insufficiently particular." *See also United States v. 1328 N. Main St.*, 634 F.Supp. 1069, 1074 n. 3 (S.D.Ohio 1986) ("The phrase 'together with other fruits, instrumentalities, and evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846' does not render the warrant insufficiently particular....' "). Therefore, despite the

---

**2.** Pursuant to the search warrant, police also sought to obtain evidence of a motive for the three murders, as well as evidence to substantiate an alleged sexual relationship between Defendant and his daughter, Christina McKibben. Probable cause existed to believe that such evidence would be found at Defendant's home.

holding in *Clark*, which does not control here, the Court is not convinced that the warrant in this case was facially overbroad.[3]

■ Turning to Defendant's final argument, that many of the items seized exceeded the scope of the warrant, the Court notes that "even evidence not described in a search warrant may be seized if it is reasonably related to the offense which formed the basis for the search warrant." *United States v. Wright*, 343 F.3d 849, 863 (6th Cir.2003) (internal quotation marks omitted), *cert. denied,* —— U.S. ——, 124 S.Ct. 2016, 158 L.Ed.2d 496 (2004). The Court finds that all of the items seized in this instance were reasonably related to the crimes that formed the basis for the search warrant. Defendant argues that much of the evidence seized, such as a Sprint PCS letter with the victim's address, a store receipt, computer disk files, VHS tapes, a rolodex file, a Sprint Samsung cell phone, and various photographs, had no intrinsic value to the criminal investigation. The warrant did, however, authorize the seizure of "property which may identify or trace the suspect or victim together." Much of the evidence to which Defendant objects falls into this category; it has a reasonable likelihood of elucidating the unique relationship between Defendant and Christina McKibben, as well as potential motives for the charged offenses.

For the foregoing reasons, Defendant's Motion to Suppress is **DENIED.**

**B. Motion to Strike Nature of Prior Felony Conviction from Indictment and Prevent Government from Introducing Evidence of Such**

■ Count Two of the Indictment charges Defendant with being a felon in

possession of a firearm. The Count specifies Defendant's prior felony conviction: "in the Franklin County, Ohio, Court of Common Pleas, case number 92CR–05–2494, for the offense of kidnaping with gun specification, on or about August 31, 1992." Defendant asks the Court to strike the nature of his prior felony conviction from the indictment and to prevent the government from introducing evidence of the nature of his conviction at trial. Defendant offers to stipulate to his status as a convicted felon and argues that the nature of his conviction therefore is surplusage that should be stricken from the Indictment pursuant to Federal Rule of Criminal Procedure 7(d). Defendant contends that evidence of the nature of his prior conviction should be disallowed because of the substantial risk of prejudice. The United States is willing to accept Defendant's stipulation as to the fact of his prior conviction if the Court disallows the use of that conviction as a prior bad act pursuant to Federal Rule of Evidence 404(b).

■ In order to obtain a conviction under 18 U.S.C. § 922(g)(1), the relevant statute in Count Two, the government must prove the following: (1) that Defendant had a prior felony conviction; (2) that Defendant possessed a firearm; and (3) that the firearm had traveled in or affected interstate commerce. *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir.1998). Under this statute, the nature of Mayhew's prior conviction is irrelevant. In *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997), the Supreme Court held that a district court abuses its discretion when it rejects a defendant's offer to stipulate to the prior conviction

---

**3.** The search warrant at issue in this case authorized a search "[f]or articles of property used as a means of the commission of a crime, property which may identify or trace the suspect or victim together with other fruits, instrumentalities and evidence of the crime of Aggravated Murder section number 2903.01(A) of the Ohio Revised Code, at this time unknown."

element of a § 922(g)(1) offense and instead admits the full judgment record of a prior conviction, if the name or nature of the prior conviction increases the risk of a verdict tainted by improper considerations and the purpose of the evidence is solely to prove the prior conviction element. *Accord United States v. Jones,* 159 F.3d 969, 978 (6th Cir.1998). The Court explained that the risk of unfair prejudice varies from case to case but is "especially obvious" where the prior conviction was for a gun crime or for an offense similar to other charges in the pending case. *Old Chief,* 519 U.S. at 185, 117 S.Ct. 644; *accord Jones,* 159 F.3d at 978–79.

Pursuant to *Old Chief,* this Court is required to accept Defendant's offer to stipulate to the prior conviction element of the § 922(g)(1) offense. The risk of unfair prejudice is "especially obvious" here because not only did the prior conviction involve a gun specification, but the prior offense is virtually identical to the current alleged offense: both charges involve kidnaping with the use of a firearm. The government therefore will not be permitted to introduce evidence of the nature of Defendant's prior conviction for the purpose of establishing the existence of that prior felony conviction.

■ Federal Rule of Criminal Procedure 7(d) provides as follows: "Upon the defendant's motion, the court may strike surplusage from the indictment or information." Fed.R.Crim.P. 7(d). The Court agrees with Defendant that in light of the substantial risk of unfair prejudice from the introduction of the name or nature of the prior conviction, and in light of the Court's ruling that such evidence will not be admitted for the purpose of proving the prior conviction element of Count Two, the explanation of the conviction contained in Count Two of the Indictment is surplusage and should be stricken.

■ Finally, the Court must consider whether evidence of the nature of Defendant's prior conviction, while not admissible to prove the prior conviction element of § 922(g)(1), might nonetheless be admissible as a prior bad act pursuant to Federal Rule of Evidence 404(b). Rule 404(b) provides, in pertinent part, as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

Fed.R.Evid. 404(b). While evidence of Defendant's prior kidnaping crime might have some evidentiary value pursuant to Rule 404(b), that value is not substantial. The offense occurred over ten years before the events in question in this case, and the victim at that time was not related to any of the August 2003 victims.

Rule 403 of the Federal Rules of Evidence requires the Court to conduct a balancing test to determine the admissibility of such evidence: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. . . ." Fed. R.Evid. 403. As already mentioned, the probative value of this evidence is slight. The danger of unfair prejudice, however, is substantial. Because of the similarity between the prior offense and the current alleged offense, the jury, upon hearing of the prior offense, could easily be seduced into a sequence of bad character reasoning. The risk of unfair prejudice to Defendant from this evidence therefore substantially outweighs its probative value. Evidence of Defendant's prior kidnaping offense thus will not be admitted at trial.

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Strike the Nature of His Prior Felony Conviction from Count Two of the Indictment and Prevent the Government from Introducing Evidence as to the Nature of His Prior Felony Conviction *in toto.*

### C. Motion for Relief from Joinder

■ In his Motion for Relief from Prejudicial Joinder, Defendant asks the Court to sever Count Two from the other Counts of the Indictment so that he is afforded two separate trials—one on Count Two and one on all other Counts. Defendant argues that, pursuant to Federal Rule of Criminal Procedure 14, he is entitled to a separate trial on Count Two because evidence that he was a convicted felon in possession of a firearm would prejudice the jury against him and jeopardize his right to a fair trial. The United States contends that it is proper to try a felon in possession charge and other charges together and that trying them separately would waste judicial resources. The United States further claims that the public interest in speedy, efficient trials outweighs any potential prejudice to Defendant. Moreover, a jury is presumed capable of following instructions and considering each count separately.

Rule 8(a) of the Federal Rules of Criminal Procedure explains when joinder of offenses is proper:

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

Fed.R.Crim.P. 8(a). Defendant concedes that, pursuant to Rule 8(a), Count Two was properly joined with the other Counts in the Indictment. He argues, however, that joinder of the felon in possession charge of Count Two would unfairly prejudice him and that he thus is entitled to relief from that joinder pursuant to Federal Rule of Criminal Procedure 14(a).

■ Rule 14(a) provides as follows: "If the joinder of offenses or defendants in an indictment ... appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R.Crim.P. 14(a). The decision to sever pursuant to Rule 14 is within the sound discretion of the trial court. *United States v. Lane*, 474 U.S. 438, 439 n. 12, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986). In order to obtain a separate trial, a defendant has a heavy burden of demonstrating that specific and compelling prejudice will result from joinder and that the prejudice can only be alleviated by separate trials. *See United States v. Harris*, 9 F.3d 493, 500 (6th Cir.1993); *United States v. Gallo*, 763 F.2d 1504, 1525–26 (6th Cir.1985). If a defendant establishes the existence of prejudice, the court then must balance the defendant's interest in a fair trial against the public's interest "in avoiding a multiplicity of litigation." *United States v. Graham*, 275 F.3d 490, 513 (6th Cir.2001) (quoting *United States v. Wirsing*, 719 F.2d 859, 864–65 (6th Cir.1983)); *see United States v. Walls*, 293 F.3d 959, 966–67 (6th Cir.2002) (stating that potential jury confusion must be balanced against society's need for speedy and efficient trials).

The Court already has ruled that information concerning the nature of Defendant's prior conviction will not be admissible to prove Count Two. Indeed, the only evidence the jury will hear that arguably is prejudicial on the remaining Counts is a stipulation, read into evidence, to the effect that Defendant has been convicted of a felony. Defendant has not made a strong

showing that specific and compelling prejudice will result from this evidence. Any prejudice that will result from the jury's awareness that Defendant is a convicted felon is slight. Moreover, Defendant has not shown that the prejudice can only be alleviated by separate trials. The jury will be instructed to consider each count separately, and this Court will presume that the jury is capable of doing so. *United States v. Cope,* 312 F.3d 757, 781 (6th Cir.2002), *cert. denied,* —— U.S. ——, 124 S.Ct. 198, 157 L.Ed.2d 130 (2003). In short, any potential prejudice to Defendant from trying Count Two with the remaining Counts is substantially outweighed by the public's interest in conserving judicial resources and avoiding multiple trials.

Defendant points to *United States v. Busic,* 587 F.2d 577, 585 (3d Cir.1978), *rev'd on other grounds,* 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980), in which the Third Circuit stated, in dicta, that a felon in possession count should be severed from other, substantive counts if the evidence of the prior convictions would not be independently admissible on the other counts. The court, however, went on to state that "the better practice dictates that the government should not set forth the details of defendant's actual convictions, but merely allege that the defendant is a convicted felon." *Busic,* 587 F.2d at 585. The court in *Busic,* then, was more concerned with the prejudice flowing from the disclosure of details of the prior conviction than with any prejudice that could be traced to the disclosure of the mere fact of the defendant's prior felony conviction. This Court already has dealt with the former problem, and any prejudice of the latter sort is not compelling. For all of the foregoing reasons, the Court therefore **DENIES** Defendant's Motion for Relief from Prejudicial Joinder.

## D. Motions to Dismiss

 Defendant moves the Court for an order dismissing Counts One and Six of the Indictment pursuant to Federal Rule of Criminal Procedure 7(c)(1), which requires the Indictment to provide a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c)(1). For these two Counts of the Indictment, the relevant statutes, 18 U.S.C. § 1201 for Count One and 18 U.S.C. § 2261A(1) for Count Six, use disjunctive language while the Indictment uses conjunctive language. Section 1201 states, "[w]hoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, **or** carries away" (emphasis added), while Count One of the Indictment says, "kidnap, abduct **and** carry away" (emphasis added). A violation of § 2261A(1) requires the government to prove that Defendant's intent was "to kill, injure, harass, **or** intimidate" (emphasis added) another person, but Count Six reads, "injure, harass **and** intimidate" (emphasis added). Section 2261A(1) also requires that the victim be placed "in reasonable fear of the death of, **or** serious bodily injury to, that person" (emphasis added) or a member of that person's immediate family, while the Indictment states that Defendant placed Christina McKibben "in reasonable fear of death **and** serious bodily injury" (emphasis added).

Defendant argues that Counts One and Six of the Indictment fail to give Mayhew reasonable certainty of the nature of the accusations against him and therefore are defective even though they follow the language of the statute. The government responds that it will introduce evidence to satisfy all elements of the offenses charged. Furthermore, the government states that it will seek instructions that charge the jury in the disjunctive.

 It is settled law that an offense may be charged conjunctively in an indict-

ment even though the statute declares the offense disjunctively. *United States v. Hixon*, 987 F.2d 1261, 1265 (6th Cir.1993); *United States v. Murph*, 707 F.2d 895, 896 (6th Cir.1983). Defendant has provided no justification that would allow the Court to ignore this binding precedent. Defendant's citation to *United States v. Trinastich*, 354 F.Supp. 54 (W.D.Mo.1973), which appears to have relied on a misreading of *Pino v. United States*, 370 F.2d 247 (D.C.Cir.1966), in dismissing a kidnaping count because of the use of conjunctive language in the indictment, is unavailing. Similarly, Defendant's reliance on *Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), is unpersuasive. *Russell* involved the omission from the indictment of a specific fact that was of central importance to any prosecution under the statute involved.[4] *Russell*, 369 U.S. at 764, 82 S.Ct. 1038. Here, by contrast, the Court is unable to conceive of how the use of the word "and" in the Indictment, especially when coupled with the government's representation that it intends to introduce evidence of each conjoined element, causes Defendant to be unable to determine the nature of the accusations against him. Defendant's Motions to Dismiss Counts One and Six therefore are **DENIED**.

### E. Motions for Bills of Particulars

#### 1. Standard of Review

 A motion for a bill of particulars is addressed to the sound discretion of the trial court. *Will v. United States*, 389 U.S. 90, 98–99, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967); *United States v. Salisbury*, 983 F.2d 1369, 1375 (6th Cir.1993). The purpose of a bill of particulars is to remedy vague or indefinite language in the indictment in order " 'to minimize surprise and assist [the] defendant in obtaining the information needed to prepare a defense and to preclude a second prosecution for the same crimes.' " *United States v. Crayton*, 357 F.3d 560, 568 (6th Cir.) (quoting *Salisbury*, 983 F.2d at 1375), *cert. denied*, —— U.S. ——, 124 S.Ct. 2857, 159 L.Ed.2d 279 (2004). No bill of particulars should be issued where the indictment is sufficiently detailed. *United States v. Mahar*, 801 F.2d 1477, 1503 (6th Cir.1986); *see Salisbury*, 983 F.2d at 1375 (stating that bill of particulars is not available for the purpose of obtaining detailed disclosure of government evidence prior to trial); *United States v. Jones*, 678 F.Supp. 1302, 1304 (S.D.Ohio 1988) ("A bill of particulars is not available to obtain detailed disclosure of the government's evidence or theories prior to trial."). An indictment is sufficiently detailed when it fairly informs the defendant of the charges against which he must defend and enables him to plead an acquittal or conviction in bar of future prosecution for the same offense. *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *United States v. Phibbs*, 999 F.2d 1053, 1083 n. 14 (6th Cir.1993). An indictment generally is sufficient when it describes the offense in the words of the statute. *Hamling*, 418

---

4. The defendants in *Russell* had been charged with refusing to answer certain questions when summoned before a congressional subcommittee. 369 U.S. at 752, 82 S.Ct. 1038. A defendant is guilty of such an offense only when the question he refuses to answer is pertinent to the matter of inquiry before the committee. *Id.* at 757–58, 82 S.Ct. 1038. Because the indictments failed to indicate the subject under inquiry at the time of interroga-

tion, it was virtually impossible for prosecutors, defendants, or courts to determine whether the questions the defendants refused to answer were pertinent to those inquiries. *Id.* at 758–60, 82 S.Ct. 1038. Under these circumstances, the Court held that the indictments were defective for failing to provide this information. *Id.* at 753–54, 82 S.Ct. 1038.

U.S. at 117, 94 S.Ct. 2887; *Phibbs*, 999 F.2d at 1083 n. 14.

## 2. Count One

 Defendant moves the Court to require the government to file a bill of particulars specifying the theories of "ransom, reward, or otherwise" that the prosecution intends to use at trial in proving the kidnaping charge stated in Count One. Specifically, Defendant wants to know what "ransom or reward" theories the government intends to use since there are no facts supporting prosecution on those theories. Alternatively, if the government is going to proceed with an "or otherwise" case, Defendant wants to know what benefit the government will argue that he received from otherwise holding Christina McKibben. The government states that it is proceeding under an "or otherwise" theory. It argues that the disclosure of any further information would be beyond the scope of the discovery required by Federal Rule of Criminal Procedure 16 and that a bill of particulars is not available for the purpose of discovering the government's theories or obtaining detailed disclosures of its evidence prior to trial.

 Count One alleges a violation of 18 U.S.C. § 1201. Section 1201 subjects to criminal penalties "[w]hoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person." Count One charges that Defendant "did willfully and unlawfully kidnap, abduct and carry away Christina McKibben and willfully transport Christina McKibben in interstate commerce from the Southern District of Ohio to the state of West Virginia, and did hold her for ransom, reward or otherwise." The words "or otherwise" in the statute have been interpreted broadly to permit conviction where there is any non-pecuniary motive for the kidnaping. *United States v. Sarracino*, 131 F.3d 943,

947 (10th Cir.1997) (stating that the "use in the statute of the words 'or otherwise' shows an intent by Congress to include within the offense any holding of a kidnapped person for a purpose desired by the captor") (quoting *De Herrera v. United States*, 339 F.2d 587, 588 (10th Cir. 1964)); *United States v. Bordeaux*, 84 F.3d 1544, 1548 (8th Cir.1996) ("We have noted that the 'or otherwise' requirement has been broadly interpreted and have held that it is met if the person kidnapped was taken for some reason that the defendant considered of sufficient benefit to him, or for 'some purpose of his own.' ") (quoting *United States v. Eagle Thunder*, 893 F.2d 950, 953 (8th Cir.1990)) (internal quotation marks omitted); *United States v. Adams*, 83 F.3d 1371, 1373 (11th Cir.1996) (observing that the words "or otherwise" in the kidnaping statute "comprehends any purpose at all") (quoting *Clinton v. United States*, 260 F.2d 824, 825 (5th Cir.1958)).

Defendant contends that because the phrase "or otherwise" has been interpreted with such breadth, the phrase is essentially meaningless, and he is entitled to a bill of particulars to apprise him of the nature and scope of the accusation. Defendant relies upon *United States v. Bentley*, 310 F.2d 685, 685–86 (6th Cir.1962), where the court stated, in dicta, that if the defendant had wanted information as to the specific motive or purpose charged in the indictment, "he could have secured it by asking for a bill of particulars ... to set forth the meaning of otherwise."

Count One of the Indictment fairly informs Defendant of the charge against him and would enable him to plead an acquittal or conviction in bar of future prosecution for the same offense. *See Hamling*, 418 U.S. at 117, 94 S.Ct. 2887. The fact that he is not aware of the precise motive or purpose that the government intends to impute to him at trial does not entitle

Defendant to a bill of particulars. The government is not required to disclose its theory of the case to a defendant. Defendant has been provided with specific information regarding the date, victim, and locations of the alleged crime. The fact that any motive will suffice in proving the offense raises the possibility that the government does not even have a specific motive in mind. Defendant's Motion for a Bill of Particulars on Count One is **DENIED.**

### 3. Counts Three, Four, and Five

Defendant moves the Court for an order requiring the government to file a bill of particulars providing details not included in the Indictment for Counts Three, Four, and Five. First, Defendant would like the government to identify the geographic location(s) other than the Southern District of Ohio mentioned in Count Three of the Indictment in which the improvised explosive device was transported and in which he possessed said device. Count Three reads, in part, "in the Southern District of Ohio and elsewhere, the defendant, JOHN RICHARD MAYHEW, JR., did knowingly." Second, Defendant would like the explosive device mentioned in Counts Three, Four, and Five of the Indictment to be identified either by description or serial number. Count Three refers to "an improvised explosive device." Count Four states that Mayhew "did knowingly possess a firearm, that is, an improvised explosive device, not registered to him." Count Five mentions "an unregistered firearm, that is, an improvised explosive device, not identified by a serial number."

Defendant contends that these Counts of the Indictment are not sufficiently detailed to inform him of the charges against which he must defend and enable him to plead an acquittal or conviction in bar of future prosecution for the same offense. He argues that in Count Two of the Indictment, the weapon mentioned is identified by the specific model of handgun that Defendant was alleged to have possessed, but that without that kind of specificity on Counts Three, Four, and Five, he cannot properly defend himself. There were multiple firearms found in Mayhew's vehicle, and he was in more than one geographic location, so he claims that he needs to have the government respond to this Motion in order to give the other Counts the same clarity and meaning as Count Two.

The government argues that the Motion should be denied because the Indictment provides sufficient notice of the offenses with which Defendant is charged and because the Motion requests discovery beyond the scope of Rule 16. The government further argues that a bill of particulars is not available for the purpose of discovering the government's theories or obtaining detailed disclosure of government evidence prior to trial.

██ In this instance, the government could provide a bill of particulars without disclosing its theories or evidence beyond what it already is required to provide pursuant to Federal Rule of Criminal Procedure 16. The government easily could indicate, to the best of its knowledge, the geographic locations other than the Southern District of Ohio. Similarly, the government could provide some description of the improvised explosive device(s), whether by listing components, identifying where the device was found, or otherwise.[5] While Defendant appears to understand what the charges are, the Court acknowledges the legitimacy of Defendant's concern that the Indictment be specific enough to avoid a

---

**5.** The Court recognizes that the description of the improvised explosive device(s) is unlikely to be as specific as the description of the handgun since, by its very nature, an impro-

vised device is not likely to have a serial number or a model name. Still, the government readily could provide *some* additional detail.

**1064**

second prosecution based on these same events. The Court would not countenance Defendant having to face a second prosecution merely because the Indictment was not specific as to which device(s) the current prosecution relates. Defendant already should have access for inspection to the weapons or devices mentioned; a bill of particulars simply safeguards him from later charges. Because the provision of more specific information in this instance does not require the government to disclose its theories and does not require a detailed disclosure of evidence, the Court **GRANTS** Defendant's Motion for a Bill of Particulars on Counts Three, Four, and Five.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Suppress Evidence; **GRANTS** Defendant's Motion to Strike the Nature of His Prior Felony Conviction from Count Two of the Indictment and Prevent the Government from Introducing Evidence of the Nature of His Prior Felony Conviction; **DENIES** Defendant's Motion for Relief from Prejudicial Joinder; **DENIES** Defendant's Motions to Dismiss Counts One and Six; **DENIES** Defendant's Motion for a Bill of Particulars on Count One; and **GRANTS** Defendant's Motion for a Bill of Particulars on Counts Three, Four, and Five.

**IT IS SO ORDERED.**